### O'NEIL v. O'NEIL et al.

(Court of Appeals of District of Columbia. Submitted March 6, 1924. Decided June 2, 1924. Rehearing Denied June 28, 1924.)

No. 4042.

1. **Evidence ⬅⟹253(1)—Confession. signed and sworn to by corespondent in defendant's absence, not admissible.**

A written confession, signed and sworn to by corespondent in defendant's absence, *held* properly disregarded.

⬅⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

(299 F.)

2. **Witnesses** ⬲303—**Corespondent may properly refuse to testify as to alleged adultery more than three years ago, in absence of proof of pending indictment required to be found within three years.**

   A corespondent may properly refuse to answer question concerning her alleged adultery with defendant more than three years ago, on ground that an answer might incriminate her, notwithstanding Rev. St. § 1044, as amended in 1921 (Comp. St. Ann. Supp. 1923, § 1708), requiring an indictment charging adultery to be found within three years after act charged, in absence of proof that no indictment was pending against corespondent.

3. **Adultery** ⬲1—**Indictable only if committed by married person.**

   Under Code D. C. § 874, an act of adultery, if committed by a woman while sole, is not indictable, but, if committed by her while married, it is indictable.

4. **Witnesses** ⬲303—**Witness may not claim privilege against self-incrimination, if crime is barred by limitations.**

   A witness may not claim privilege against self-incrimination, if a prosecution of criminal acts under inquiry is barred by limitations.

5. **Trusts** ⬲63¾—**Wife, depositing money in husband's name, held not to create implied trust.**

   Where husband regularly delivered his earnings to his wife, and she, after defraying household expenses, deposits remainder in husband's name, *held* that no trust will be implied.

6. **Divorce** ⬲155—**Evidence held to require divorce from bed and board, under prayer for general relief.**

   Evidence *held* to require divorce from bed and board in favor of plaintiff wife under a bill containing no specific prayer for such a decree, but charging desertion and praying for general relief, in view of Code D. C. § 968.

Appeal from the Supreme Court of the District of Columbia.

Divorce action by Catherine E. O'Neil against James E. O'Neil and others. From a decree dismissing the appeal, plaintiff appeals. Decree reversed, in so far only as it refused to grant a divorce from bed and board, and remanded, with directions that such a decree be entered.

George P. Hoover and F. L. Neubeck, both of Washington, D. C., for appellant.

S. McC. Hawken, George F. Havell, and Foster Wood, all of Washington, D. C., for appellees.

Before SMYTH, Chief Justice, VAN ORSDEL, Associate Justice, and MARTIN, Presiding Judge of the United States Court of Customs Appeals.

MARTIN, Acting Associate Justice. In this case Catherine E. O'Neil sued her husband, James E. O'Neil, for an absolute divorce, with alimony, upon the ground of adultery, naming Rachel E. De Meza and May R. Proctor as corespondents. There was no living issue of the marriage. The plaintiff prayed also for an accounting as to certain building association deposits and other assets which she alleged were held by her husband in trust for her. The husband answered, denying the charge of adultery, and that he held any assets in trust for the plaintiff. He prayed for a limited divorce from plaintiff upon the ground of desertion. The corespondent Proctor answered, likewise denying the charge of adultery. The corespondent

⬲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

De Meza filed no answer. The trial court heard the evidence, and dismissed the plaintiff's bill at her cost. The plaintiff appealed.

[1] At the trial below the plaintiff first sought to prove acts of adultery between the defendant and the corespondent De Meza. In support of this charge she offered in evidence a certain written confession, signed and sworn to by the latter, and also tendered testimony as to oral admissions made by her, all, however, made in the absence of the defendant. These were rightly disregarded by the court.

[2] The plaintiff then called the corespondent De Meza as a witness, and asked her whether prior to June 1, 1919, she had committed acts of adultery with the defendant O'Neil. This inquiry was repeated with various assignments of places, but always with the same specification as to time. The time thus fixed, to wit, prior to June 1, 1919, was more than three years prior to the date of the inquiry. The witness refused to answer any of these questions, upon the claim that the answers might tend to incriminate her. The plaintiff opposed this claim upon the ground that under section 1044, Revised Statutes, as amended in 1921 (Comp. St. Ann. Supp. 1923, § 1708), an indictment charging adultery, to be valid, must be found within three years after the act charged therein, whereas more than that period of time had already elapsed between the date named in the inquiries and the time of the trial. The plaintiff accordingly claimed that no prosecution could be brought because of any of the acts inquired about. The court nevertheless excused the witness from answering, and this ruling is assigned as error.

[3] It appears that the corespondent De Meza was an unmarried woman during part of the time covered by these questions, being a widow, but that during the remainder of the time she was in fact married. Under section 874, District Code, an act of adultery, if committed by her while sole, would not have been indictable; but such act would have been indictable if committed by her while married. Since the disputed questions included both periods, they must be considered as relating to an indictable offense. The trial court rightly excused the witness from answering, notwithstanding the lapse of the period of limitations, since the plaintiff had failed to prove that no indictment was then pending against the witness in relation to the acts inquired of.

[4] It is true that a witness may not claim this privilege if a prosecution of the criminal acts under inquiry is barred by the statute of limitations. Brown v. Walker, 161 U. S. 591, 16 Sup. Ct. 644, 40 L. Ed. 819; Hale v. Henkel, 201 U. S. 43, 26 Sup. Ct. 370, 50 L. Ed. 652. But the burden rests upon the opponent of the privilege, not only to show in such case that the statutory period of limitation has expired, but also that no prosecution has been begun within that period, or, if begun, that it has been discontinued in such manner as to protect the witness from further prosecution.

"It is no answer to a witness' claim of privilege that the statute of limitations has run against the offense, unless it appears affirmatively that no proceedings to enforce a penalty were commenced within the period of limitations." Rapalje, Law of Witnesses, § 268.

"If it is shown that the period of limitation has elapsed, and no indictment or accusation was preferred within that period, and none is pending, the witness cannot excuse himself on the ground that his answer would tend to

criminate him." Simmons, J., in Southern Railway News Company v. Russell, 91 Ga. 808, 810, 18 S. E. 40, 41.

"But, in order to deprive the witness of his privilege, the party calling upon him to answer must not only show, that the time for prosecuting has elapsed, but he must also show, that no prosecution has been commenced within the period of limitation, or if one had been commenced, that it has been discontinued." Mr. Justice Magruder, in Lamson v. Boyden, 160 Ill. 613, 619, 43 N. E. 781, 783.

See also Wigmore, Evidence, vol. 4, § 2279; 40 Cyc. p. 2542.

The present record contains no proof upon this point; consequently this assignment of error is overruled.

[5] It appears that for many years defendant O'Neil had regularly delivered his earnings to his wife, and that after defraying the household expenses she was accustomed to deposit the remainder in a building association in the name of the defendant. There was no agreement between the parties sufficient in terms for the creation of an express trust in favor of the wife in respect to these deposits, and none would be implied from the circumstances. The same conclusion follows respecting the other assets of the defendant. The trial court therefore rightly overruled the plaintiff's prayer for an accounting for these deposits and other assets.

The trial court heard the testimony respecting the charge of adultery against the defendant with the corespondent Proctor and held that it was not proven. We shall not review the evidence upon that issue here, but will say that, while the testimony raises a grave suspicion against the defendant, we do not believe that the trial court's decision should be reversed upon that ground.

[6] It appears in the record that at the close of the trial below, and after the court had announced its decision upon the evidence, but before the entering of a decree in the case, the plaintiff's counsel moved the court to grant plaintiff a divorce from bed and board of the defendant, on the ground of desertion, as alleged in the bill of complaint. The court denied this motion, also denying the application for a limited divorce made by defendant in his cross-bill, and dismissed the plaintiff's bill at her cost. We think that the trial court should have granted the plaintiff's prayer for a limited divorce. The testimony disclosed that the plaintiff and defendant had lived with each other as husband and wife for about 20 years without apparent discord, and that their relations then became disturbed because of the defendant's intimacy with the corespondent De Meza. Then followed a period of difficulty between them, after which the defendant without sufficient cause left his wife and never returned to her. The defendant testified that his wife ordered him to leave, but this was denied by her. The two then remained separated for a period of 2 years, during which time the defendant did nothing for the support of the plaintiff. It was in this period of separation that the defendant's conduct with the corespondent Proctor was such as again to excite and justify his wife's distrust. The defendant professes that he was always willing to have his wife live with him again, but his conduct plainly made such a course out of the question. We think that under the circumstances the trial court should have granted a limited divorce in favor of the plaintiff. It is true that the bill contained no specific prayer for such a decree; nev-

ertheless it contained a charge of desertion and prayed among other things for general relief. Section 968, D. C. Code; Carey v. Carey, 8 App. D. C. 528; Hitchcock v. Hitchcock, 15 App. D. C. 81; Davis v. Davis, 48 App. D. C. 362; Snow v. Snow, 48 App. D. C. 448; Underwood v. Underwood, 50 App. D. C. 323, 324, 271 Fed. 553.

We therefore reverse the decree of the lower court in so far only as it refused to grant a divorce from bed and board to the plaintiff, and remand the case, with directions that such a decree be entered below, and for such further proceedings as are consistent herewith. The reversal is at the cost of the appellee.

This case was decided prior to the death of the late Chief Justice.