## MOORE et al. v. BACKUS et al.

### No. 5401.

Circuit Court of Appeals, Seventh Circuit.

July 13, 1935.

Walter H. Jacobs, Harold A. Smith, Robert Tieken, Henry Veeder, Albert H. Veeder, Frederic Burnham, David F. Rosenthal, Frank D. Mayer, Irving B. Goldsmith, Henry M. Wolf, Alexander F. Reichmann, Oscar D. Stern, James J. Magner, John P. Wilson, and Howard Ellis, all of Chicago, Ill., for appellants.

Morris Townley, of Chicago, Ill., for appellees.

Before EVANS, SPARKS, and FITZ HENRY, Circuit Judges.

SPARKS, Circuit Judge.

On July 28, 1933, E. W. Backus filed in the District Court his action at law against Herbert J. Blum, Gustavus F. Swift, Jr., and Allen Moore. The declaration consisted of seven counts. In the first five counts he sought to recover triple damages for alleged violation of the federal anti-trust laws, 15 USCA § 15; in the sixth count he sought recovery of damages for an alleged conspiracy in violation of the Illinois anti-trust laws, Smith-Hurd Ann. St. c. 38, § 569, Cahill's Illinois Revised Statutes, 1933, c. 38, par. 598; and in the seventh count he sought damages for an alleged conspiracy between defendants in violation of the common law of Illinois. Each count charged that prior to July 19, 1928, he had contracted to sell designated amounts of corn at certain prices in expectation that its market price would decline before the end of July, 1928, and in the belief that he would be able to purchase such corn for July delivery at prices lower than those for which he had sold it. Each count further alleged that Blum, Swift, and Moore purchased July corn and by conspiracy effected a "corner" on substantially all of the July corn available on the Chicago market, and as a result thereof, the price of July corn was raised to such an extent that Backus was compelled to default on his sales contracts and was required to settle for his defaults at a price much in excess of the true commercial value of July corn. In the first five counts he demanded triple damages in the sum of $1,000,000, and under the sixth and seventh counts he demanded damages in the sum of $300,000.

Ancillary to and in aid of his action at law, Backus, on September 29, 1933, filed his bill of discovery against Blum, Swift

and Moore, referred to as the "principal defendants," and the various brokers through whom they purchased and sold July 1928 corn, hereinafter referred to as the "defendant brokers." The court overruled appellants' motions to dismiss the bill for discovery, and thereupon answers were filed. Thereafter, Backus filed a supplemental bill of discovery asking for further and detailed evidence, which the court ordered appellants to answer, including certain portions of the original bill of discovery to which appellants had objected. The errors relied upon arose out of the rulings of the District Court requiring appellants to give the discovery requested by the original and supplemental bills.

On February 5, 1935, Elisabeth H. Backus and Seymour W. Backus, the widow and son of E. W. Backus, reported to this court that E. W. Backus had died on October 29, 1934, and that they were the duly appointed, qualified and acting administrators of his estate, by virtue of an order of the Probate Court of Hennepin County, Minnesota. They thereupon prayed this court that they might be substituted for decedent as appellees herein, and they were thus substituted without prejudice to the rights of appellants to move to vacate the order. Subsequently, appellants moved to vacate that order on the ground that the causes of action, which were in tort, did not survive but that they abated upon the death of E. W. Backus.

█ Accepting as true the allegations of the declaration in the legal action, it would seem that decedent suffered a property injury within the meaning of the Sherman Anti-Trust Act (15 USCA §§ 1–7, 15 note). Chattanooga Foundry & Pipe Works v. Atlanta, 203 U. S. 390, 27 S. Ct. 65, 51 L. Ed. 241. Whether his alleged causes of action survived to his administrators must be tested by the common law as supplemented by the early English statutes. For many centuries the maxim actio personalis moritur cum persona applied to all tort actions. In the fourteenth century, however, the English statute of 4 Edw. III, c. 7, was enacted, which limited and became a part of the common law. That statute is the basis of this controversy and reads as follows: "Whereas in times past executors have not had actions for the trespass done to their testators, as of the goods and chattels of the same testators carried away in their life, and so such trespasses have hitherto remained unpunished; it is enacted that the executors in such cases shall have an action against the trespassers to recover damages in like manner as they, whose executors they be, should have had if they were in life." (Quoted in Pollock on Torts [11th Ed.] page 66.)

It is contended by appellants that this statute altered the common law rule only as to actions relating to specific, tangible, personal property, and that with this exception the former common law rule remained precisely the same regardless of whether the defendant or plaintiff died. In other words, they urge that, except as to actions brought to recover damages for injury to personal property in the tangible sense, all actions ex delicto abate upon the death of either party in the absence of an express statute to the contrary. It is conceded that there is no express statute other than 4 Edw. III, c. 7, which modifies the common law rule. It will be noted that this statute did not alter the common law rule in cases where the defendant died. Prior to the adoption of the common law and the statute of Edward by the American legislatures the English courts had many occasions to construe that statute with respect to the point here raised, and their construction was adverse to appellants' present contention.

In Sale v. The Bishop of Lichfield, Owen 99, 74 English Reports 928 (1589), decedent owned an advowson, consisting of a right of appointment to an archdeaconry, which the Bishop withheld. The executor recovered judgment restoring the advowson and awarding damages. Here there was no taking of tangible goods, but the court held that the statute of Edward was applicable, and said:

"For the statute says that they shall have an action of trespass for a trespass done to their testator, and not for taking goods, so that the taking of goods is but by way of resemblance, and not that they shall have an action of trespass for taking of goods only. * * *

"Put the case that the testator had judgment to recover damages, shall not that be assets? And why may not the damages here recovered be assets, and why shall not the grant of the advowson be assets in the hands of the executor as well as in the hands of the issue."

In a note by Sergeant Williams to Wheatley v. Lane, 1 Wms. Saund. 216, 85 English Reports 228 (1680) it was said that certain actions survive to the executor

which do not survive against him, and that: "The statute of 4 Edward III being a remedial law, has always been expounded largely; and though it makes use of the word 'trespasses' only, has been extended to other cases within the meaning and intent of the statute. * * * Therefore, by an equitable construction of the statute, an executor or administrator shall now have the same actions for any injury done to the personal estate of the testator in his lifetime, whereby it is become less beneficial to the executor, as the testator himself might have had, whatever the form of the action may be."

In Williams v. Cary, 4 Mod. 403, 87 English Reports 468 (1695) an executor recovered against a sheriff for a false return upon an execution levied during testator's life. The court in holding that the action survived, said: "It cannot be properly said in this case, that there is any actual wrong or injury done to the person of the testator; for if so, then moritur cum persona; but it is an injury done to his personal estate, in which he is represented by his executor, and therefore he may maintain this action within the equity of the statute 4 Edw. III * * * which gives him an action of trespass for a wrong done to his testator. * * * Therefore, though it be true that a personal action dies at common law with the person, yet, upon the equity of this statute, a wrong done to his estate still remains."

In Berwick v. Andrews, 1 Salkeld 314, 91 English Reports 277 (1704) decedent recovered judgment against an executor who wasted the estate of his testator thereby rendering collection of the judgment impossible. The judgment plaintiff having died, his executor charged the first executor with a devastavit and thus sued him in his individual capacity. The court held that the action survived and said:

"It lies for the executor of him to whom the wrong was done, though it lies not against the executor of him that did the wrong. Here the defendant is the person against whom the recovery was, and he has admitted assets; and the executor may as well maintain this action, as he may an action of debt for an escape where his testator might. So an executor of a parson shall maintain debt for tithes, as the testator might: for in this case the tort was to the property of the testator, and vested an interest in him, and is within the equity of the Statute de Bonis Asportatis; and the same reason holds for an action of debt, as for a scire facias. Vide 2 Sid. 102."

See 2 Lord Raymond 971, 92 English Reports 147, where the court said:

"But the Statute of Edward 3 is a remedial law, which has always been taken by equity, wherever there is a matter of property in question it is brought within the statute."

We are unable to discover any different interpretation of the statute of Edward by the English courts up to the time it, with the common law pertaining to this subject, was adopted by the American States. That the same construction has been subsequently followed by the English decisions is substantiated by the following citations: Wilson v. Knubley, 7 East 128, 103 English Reports 49; Twycross v. Grant, L. R. 4, C. P. D. 40; Hatchard v. Mege, 18 Q. B. D. 771; Williams on Executors (12 Ed.) Vol. I, 491; Pollock on Torts (11 Ed.) 62.

It is not denied that Illinois, and practically all of the other states, adopted the common law of England as modified by the statute of Edward, with respect to the subject now under discussion. Bunker v. Green, 48 Ill. 243; Wilcox v. Bierd, 330 Ill. 571, 162 N. E. 170; Shedd v. Patterson, 312 Ill. 371, 144 N. E. 5. In so doing they adopted the construction which the English courts had placed upon the statute of Edward prior to the time of the adoption. Of course, Illinois, as well as the other states, might thereafter construe the common law and its supplementary English statutes as it pleased, and such construction would become the common law of the particular state thus construing it, and it would be enforced even by the federal courts with respect to matters of a local character. In Wheaton and Donaldson v. Peters and Grigg, 8 Pet. 591, 657, 658, 8 L. Ed. 1055, the Court said: "It is clear, there can be no common law of the United States. * * * When, therefore, a common-law right is asserted, we must look to the state in which the controversy originated." That pronouncement, however, was considerably modified in the later case of Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865. In that opinion, written by Justice Story, the right and duty of the federal courts to depart from the decisions of the state court on general questions received the sanction of the Supreme Court, and became a recognized rule of decision for federal courts. In Note 6 following section 725, USCA title

28, the annotator states, in discussing the Tyson Case:

"The question involved in that case related to commercial paper, but Justice Story's opinion reaches far beyond questions of commercial law and embraces practically all general questions of common law. Indeed, the only questions the language of that opinion seems to leave under the binding effect of the state decisions are those in relation to 'rights and titles to things having a permanent locality, such as the rights and titles to real estate and other matters immovable and interterritorial in their nature and character.'

"This doctrine declared in the Swift v. Tyson Case * * * has steadily advanced beyond the actual·question involved in that case, and it may be said that at the present time it is the settled general doctrine of the federal courts that they will themselves determine, without regard to the decisions of the highest courts of the state, as binding authority, all general questions of the common law involving matters of mercantile or commercial law or of general jurisprudence."

A long list of cases from the Supreme Court and other federal courts follow and we think they fully support the annotation.

■ The federal statute upon which decedent's action at law was based is section 7 of the Sherman Anti-Trust Act, 15 USCA § 15 and note.[1] The Act is quite general in its nature, and its successful enforcement would seem to require a uniform interpretation in its application, as well as a uniform interpretation of the common law as modified by the statute of 4 Edw. III. There is nothing in the character of the legal action as stated in the first five paragraphs which rendered it local to the State of Illinois, and the construction of the common law and of the statutes involved we think must come under the classification of general jurisprudence, and is to be determined by the federal court.

■ The federal decisions are not in accord with respect to the question here presented. Appellants rely upon Caillouet v. American Sugar Refining Company (D. C.) 250 F. 639, and Bonvillain v. American

Sugar Refining Company (D. C.) 250 F. 641. Both cases were decided by the same judge in the District Court for the Eastern District of Louisiana. In the first case, certain heirs and an assignee corporation sued the Refining Company to recover damages to decedent's estate, caused by the company's successful conspiracy to monopolize the sugar refining business, which depressed the raw sugar market. The court noted that there was no United States Statute controlling the question of survival, and that it must be determined by the principles of the common law, regardless of the law of Louisiana. It held that the death abated the action, and that it was not saved by the exception to the general common law rule with respect to diminishing decedent's estate by depriving it of particular property. The court said that that exception was based on the theory that the duty of the wrongdoer to return the property created a quasi contract. That theory was no doubt correctly stated as applied to cases where the defendant died, and even in cases where the plaintiff died before the enactment of the statute of Edward. We do not understand, however, that that statute presupposes the existence of a quasi contract. Certainly the construction placed upon it by the English decisions prior to American Independence does not warrant such conclusion.

■ The Bonvillain Case was based on facts quite analogous to those in the Caillouet Case, and the same ruling was made in each. There the court referred to United Copper Securities Company v. Amalgamated Copper Company (C. C. A.) 232 F. 574, and Imperial Film Exchange v. General Film Company (D. C.) 244 F. 985, and noted that their holdings were contrary to his holding in the Caillouet Case, but he declined to follow them. We are constrained, however, to follow the ruling in the two cases last cited for they seem to us more nearly to comport with the generally accepted interpretation of the statute of Edward in connection with what seems to us to be the reasonable construction of section 7 of the Sherman Act. That Act gives a right of action to anyone who shall be injured in his business or property by rea-

[1] 15 USCA § 15: "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

son of anything forbidden in the anti-trust laws. In Chattanooga Foundry & Pipe Works v. Atlanta, supra, it is said that a man is injured in his property when his property is diminished. The allegations of the declaration in the action at law show that decedent sustained such injury, and we think the right of action survives his death.

■ While we do not agree with appellants' contention that in the determination of the question before us this court is bound by the construction of the common law and the statute of Edward as enunciated by the courts of Illinois, yet, if that point be conceded to appellants, we think our conclusion must remain the same, because we find nothing in the Illinois decisions which is at variance with that conclusion. Of the cases cited and discussed by appellants, Jones v. Barmm, 217 Ill. 381, 75 N. E. 505, related to the death of the defendant and not the plaintiff, and therefore is not in point. Wilcox v. Bierd, 330 Ill. 571, 162 N. E. 170, related to personal injuries. Bunker v. Green, 48 Ill. 243, held that under the statute of Edward, actions for injuries to personal property should survive, and executors might recover for such injuries. Shedd v. Patterson, 312 Ill. 371, 144 N. E. 5, held that an action for malicious prosecution did not survive the death of the plaintiff. Reed v. Peoria & Oquawka Railroad Co., 18 Ill. 403, related to damages to real estate. None of these cases, save Bunker v. Green, comes within the purview of the statute of Edward, for the statute deals only with wrongs to personal property.

Appellants also argue that the fact that the statute on Administration provides for the survival of certain actions in addition to those which survive at common law proves that those actions specified in the Act did not previously survive. The actions named are: "Actions of replevin, actions to recover damages for an injury to the person (except slander and libel), actions to recover damages for an injury to real or personal property. * * *" Smith-Hurd Ill. Ann. St. c. 3, § 125. It will be observed that such statute was necessary to preserve all the actions named as to cases where a defendant died, since neither by the common law nor by the statute of 4 Edward III could such actions survive the death of a defendant. The statute also preserves in favor of the representatives of a deceased plaintiff, ac-

tions for personal injuries which had not previously survived. The case upon which appellants rely for a discussion of the effect of this statute, Jones v. Barmm, 217 Ill. 381, 75 N. E. 505, had to do with an action for malicious interference with business, during the course of which the defendant died. It will, therefore, be observed that the case does not operate to change the holding of Bunker v. Green, supra, as to the survivability of personal property actions following the death of a plaintiff. We are convinced that the action did not abate upon the death of decedent.

■ None of the appellants except Moore, Swift, and Blum were parties to the legal action for damages, and we think that none but the parties to or those interested in that action can properly be made parties defendant to this bill of discovery. That seems to be the general rule and is supported by the great weight of American and English authorities. Brown v. Swann, 10 Pet. 497, 9 L. Ed. 508; Southern Railway Company v. North Carolina Corporation Commission (C. C.) 104 F. 700, 704; Detroit Copper & Brass Rolling Mills v. Ledwidge, 162 Ill. 305, 44 N. E. 751. See 9 R. C. L. "Discovery," §§ 7 and 8, page 169. The English rule at the time of the adoption of the common law by the American States provided that a person who had such an interest in an action at law as to make him in effect a party thereto, though he was not a party of record, might be made a party defendant to a bill of discovery in aid of such legal action. It will be noted, however, that the right of discovery as to such person presupposed his interest in the action. Where a bill in equity is instituted in aid of a legal action, a person who has no interest in the subject matter of the suit, and against whom no relief is sought, cannot as a general rule properly be made a party defendant for the purpose of discovery. The reason for these rules is that persons not parties to the action may be examined in the trial of the action at law as witnesses. See 20 Ann. Cas. 906–910.

In this action there seems to be no reason why the general rule should not be followed. It is no doubt true that the brokers were agents of appellants, but it does not appear and it is not claimed, that any of them have any interest in the action. It will be presumed that they are not thus interested, for if they were, decedent no doubt would have joined them as de-

fendants. In Sinclair Refining Company v. Jenkins Petroleum Process Company, 289 U. S. 689, 53 S. Ct. 736, 737, 77 L. Ed. 1449, 88 A. L. R. 496, upon which appellees rely, the Court said: "At times, cases will not be proved, or will be proved clumsily or wastefully, if the litigant is not permitted to gather his evidence in advance. When this necessity is made out with reasonable certainty, a bill in equity is maintainable to give him what he needs. Equity Rule 58 (28 USCA [following] § 723)." That action for discovery was directed to the defendant alone, and we do not understand that the pronouncement was intended to permit a discovery from mere witnesses who had no interest in the action, or for mere evidentiary facts. For the foregoing reasons we hold that it was error to require any of the appellants except Moore, Swift, and Blum to answer any of the interrogatories submitted.

Appellants allege as error the rulings of the District Court in directing Moore, Swift, and Blum to answer certain interrogatories with respect to the transactions in question, and to submit their books, papers, and documents for inspection and examination. We are first confronted with their objections to such orders on the ground that to comply with them would infringe their rights under the Fifth Amendment to the Federal Constitution relative to the disclosure of evidence of an incriminating character, and would tend to establish their guilt of the crime defined in section 2 of the Sherman Anti-Trust Act, 15 USCA § 2.

It is clear that any criminal action under that section based upon the facts here alleged would be barred by the statute of limitations if it were instituted at any time since 1931. Appellants, however, contend that, so far as this record discloses, there may be a criminal action or actions yet pending which were instituted prior to the expiration of the period of limitations, and that until the non-existence of such action or actions has been established, they should not be required to answer. They urge that the burden of proof thereof rests upon those seeking the discovery. We think appellants' contention is sound. The rule is that if the offense is outlawed or pardoned, or the criminal liability therefor has been removed by statutory enactment, then the interrogated party cannot claim the constitutional protection. When the privilege is demanded, the question first arises whether the action is outlawed. If it is not outlawed, the interrogating party may still demand the answers if it is shown either that a pardon has issued or that a statutory enactment has relieved the witness from criminal prosecution, and the burden of establishing those facts, we think, clearly rests upon the interrogator. If the criminal action is outlawed, the questions must be answered, but here again, we think the burden of establishing the fact of its being outlawed rests upon the interrogator. Wigmore on Evidence, § 2279, says as to this problem: "A crime erased by lapse of time exists no longer. There is therefore no criminal fact to be privileged from disclosure. * * * The only question can be whether the claimant or the opponent of the privilege has the burden of proof with respect to the usual condition upon which the running of the statutory period depends, namely that no prosecution has been begun within the time; and this burden is held to be upon the opponent." Citing Southern R. N. Co. v. Russell, 91 Ga. 808, 18 S. E. 40; Lamson v. Boyden, 160 Ill. 613, 43 N. E. 781; Bank of Salina v. Henry, 2 Denio (N. Y.) 155. See, also, O'Neil v. O'Neil, 55 App. D. C. 40, 299 F. 914; Nekoosa-Edwards Paper Company v. News Publishing Company, 174 Wis. 107, 182 N. W. 919; Jones, Commentaries on Evidence (2d Ed.) Vol. 6, § 2485. The record in the case at bar is silent as to whether or not any prosecution was pending when the questions were asked, and since we think the burden rested upon decedent to prove the absence of it, it follows that the bill of discovery could not be enforced against appellants Moore, Swift, and Blum.

In support of appellees' contention that the running of the statute disentitles the party interrogated to claim the privilege, they cite Brown v. Walker, 161 U. S. 591, 16 S. Ct. 644, 40 L. Ed. 819, Hale v. Henkel, 201 U. S. 43, 26 S. Ct. 370, 50 L. Ed. 652, and Robertson v. Baldwin, 165 U. S. 275, 17 S. Ct. 326, 41 L. Ed. 715. In none of those cases was the question of burden of proof before the Court, or passed upon. Each, however, recognized the rule that before answers could be required, the offense must have been outlawed or pardoned, or the criminal liability removed by statutory enactment. In the first two cases cited, there was an express statutory enactment which relieved the witness from prosecution, and in the third, those two were re-

ferred to in passing on the question of the constitutionality of a statute relating to deserting seamen. We have found no case, and our attention has been called to none, where the question of burden of proof was squarely presented to the court and the ruling was adverse to the claimant of the privilege.

Under the rulings we have referred to, we think the court erred in requiring Moore, Swift, and Blum, and all other defendants who raised the objections upon which we have passed, to answer the interrogatories, and it is therefore unnecessary to pass on the other alleged errors.

The orders are reversed and the cause is remanded for further proceedings not inconsistent with this opinion.