## Prep v. Pennsylvania Turnpike Commission

*James W. Evans* and *Goldberg, Evans & Katzman,* for plaintiff.

*Henry E. Harner, Aaron M. Fine* and *Dilworth, Paxson, Kalish, Kohn & Dilks,* for defendant.

*Richard W. Cleckner* and *Nissley, Cleckner & Fearen,* for deponent.

MILLER, J., November 19, 1962.—In this assumpsit action there is before us a motion for protective order under Pennsylvania Rule of Civil Procedure 4012, whereby a witness seeks to resist the giving of an oral deposition which defendant asks under Rule 4007. By way of background, it appears from his complaint that plaintiff, Victor Prep, trading as Prep Contracting Company (Prep), claims that the sum of $51,567.58 is due for delivery of cinders and loss of profits on cinders which defendant, Pennsylvania Turnpike Commission (Turnpike), refused to accept under a contract between the parties. In its answer, which included new matter and a counterclaim, defendant admitted the contract but alleged that same was obtained by means of bribery and a conspiracy to defraud defendant, and that therefore recovery is barred to plaintiff. Defendant demands in its counterclaim the sum of $338,617.52, which it alleges was improperly paid to plaintiff who was engaged in the said conspiracy.

This case was before us previously on Turnpike's motion to dismiss the complaint based upon Prep's refusal to answer certain interrogatories. By our opinion filed December 4, 1961, speaking through the late Presi-

dent Judge William H. Neely, we overruled defendant's motion for summary judgment, but directed plaintiff to make answer to the disputed interrogatories: 78 Dauph. 164 (1961). The interrogatories which were the subject of this previous opinion and order, were as follows:

"3. List all cash payments and gifts made by you or at your direction (other than checks identified in answer to interrogatories 1 and 2), to any official or employee of the Pennsylvania Turnpike Commission, giving the amount or nature of each, the cost of each gift other than cash, the date of delivery, the name of the recipient, and the purpose thereof.

"4. To the extent that they do not already appear in answer to interrogatories 1 to 3, identify every payment made, either by check or cash, and every gift made by you or at your direction to or for the benefit of: . . . (b) August Brentari . . . and state the purpose of each such payment and gift."

In accordance with our order, Prep filed supplemental answers to these interrogatories as follows:

"3. In December 1954, a Christmas gift of Three Hundred ($300.00) Dollars in cash was made to August H. Brentari, and a Christmas gift of One Hundred ($100.00) Dollars in cash was made to the same person in December, 1955.

"4 (b). None."

After receipt of such supplemental answers, defendant, Turnpike, pursuant to Rule 4007, filed a notice of its intention to take the deposition upon oral examination of the said August H. Brentari (Brentari) at the offices of defendant's local counsel. It appears from a transcript furnished us by defendant that Brentari was served with a subpoena to compel his attendance at the deposition, and that he did appear at the appointed time and place with his personal counsel, the deposition also being attended by counsel for both of the parties. Dur-

ing the course of the deposition, in response to all questions put to him by Turnpike's counsel other than as to his name, place of residence and employment, Brentari stated substantially as follows: "I respectfully decline to answer that question on the basis my answer may tend to incriminate me and invoke the privileges of the State Constitution against self-incrimination."

Some of the questions to which the witness Brentari made the foregoing reply, claiming the privilege against self-incrimination, were as follows:

"Q. You were formerly Purchasing Agent for the Pennsylvania Turnpike Commission, isn't that correct?

"Q. Did you testify before the Special Investigating Grand Jury of Dauphin County in 1957?

"Q. Have you ever received any payments from Victor Prep who is present here today, during the time when you were employed by the Pennsylvania Turnpike Commission?"

Counsel for the Turnpike thereupon filed a motion to compel deponent to answer questions, under Rule 4019, to which Brentari's counsel filed an answer. Later, Brentari also filed a motion for protective order (incorrectly denominated a "petition") under Rule 4012, to which Turnpike filed an answer, the issues raised in these two motions being identical. Our order herein disposing of the motion for protective order will also necessarily dispose of Turnpike's motion to compel deponent's answers.

We are thus called upon to decide primarily whether Brentari may be protected from the taking of this deposition because of the privilege which he claims against self-incrimination as conferred by article I, section 9, of the Pennsylvania Constitution. His right to claim this protective order is made under the applicable provisions of Rule 4011, as follows:

"No discovery or inspection shall be permitted which ... (c) relates to matter which is privileged ..."

Besides this chief objection, Brentari challenges Turnpike's right to this oral deposition on the additional grounds that Turnpike already has knowledge of the matters which it here seeks to elicit from him; that he has not been advised of the scope or subject matter of the inquiry; and that, in any event, he should more properly be required to submit to deposition on written interrogatories rather than oral examination.

After careful consideration of the briefs filed and arguments advanced by counsel for both defendant Turnpike and the witness Brentari,[1] we have reached the conclusion that Brentari must submit to this oral deposition, and that he must answer the questions to which he previously refused to make answer at the deposition of January 12, 1962, as well as any other questions reasonably germane to the issues of this case which may be propounded by defendant's counsel.

*1. The Privilege Against Self-incrimination.*

In arriving at this conclusion, we are guided first by the provisions of article III, section 32, of the Pennsylvania Constitution:

"Any person may be compelled to testify in any lawful investigation or judicial proceeding against any person who may be charged with having committed the offense of bribery or corrupt solicitation, or practices of solicitation, and shall not be permitted to withhold his testimony upon the ground that it may criminate himself or subject him to public infamy; but such testimony shall not afterwards be used against him in any judicial proceeding, except for perjury in giving such testimony, and any person convicted of either of the offences aforesaid shall, as part of the

---

[1] No brief was filed nor argument made on behalf of plaintiff Prep.

punishment therefor, be disqualified from holding any office or position of honor, trust or profit in this Commonwealth."

Upon application of this constitutional provision to the issues raised by Brentari, there is no question that plaintiff Prep has been charged with bribery in both the answer and counterclaim filed by defendant Turnpike. It is true that this is not a criminal proceeding charging Prep with the crime of bribery, but we find no authority or reason which would compel the limitation of this constitutional protection to proceedings involving criminal charges. Certainly, many crimes give rise to actionable civil wrongs, litigation of which involves proof of at least the physical elements of the crime involved, e.g., fraudulent conversion, cheating by fraudulent pretenses, embezzlement, assault and battery, malicious mischief, manslaughter, etc. Therefore, the Turnpike will have to prove that Prep in fact committed what amounts to the crime of bribery if it is to be successful in voiding this contract and collecting the sums demanded from Prep. Further, it is our opinion that this assumpsit action falls within the definition of a "judicial proceeding" as the same is contemplated by this section of the Constitution. It has been held that immunity from self-incrimination thus conferred is applicable to testimony given before a grand jury: Commonwealth v. Kilgallen, 379 Pa. 315 (1954). A similar conclusion was reached much earlier by the United States Supreme Court in Hale v. Henkel, 201 U. S. 43, 66-67 (1906), wherein it was held that the word "proceeding" should be given a broad construction. Two Federal circuit courts have held that the word "proceeding" is a word of broader meaning than "action", and that it includes both actions at law as well as suits in equity: In re Adoption of a Minor 136 F. 2d 790, 791 (D. C. Cir., 1943); Garrison v. Johnson, 66 F. 2d 227, 229 (10th Cir., 1933).

Perhaps the leading Pennsylvania case on the application of this section of the Constitution is Commonwealth v. Bell, 145 Pa. 374 (1891). There, a witness had been convicted of contempt for refusing to testify against a defendant upon the trial of an indictment for bribery, the witness having been ordered to testify following instructions from the trial judge of the protection afforded him by article III, section 32. In upholding the contempt conviction, the Supreme Court stated that it was the duty of the trial judge to determine whether or not the answers requested from the witness would incriminate him and whether he would be immune from prosecution under the aforesaid constitutional provision. More important, the Supreme Court held that even if the trial court had been erroneous in advising the witness that he would be protected from self-incrimination under the constitutional provision, this judicial instruction alone would have protected him, and his testimony could not afterwards have been used against him in any judicial proceeding:

". . . the thirty-second section, now under consideration, makes provision for securing testimony, 'in any lawful investigation or judicial proceeding against any person who may be charged with the offence of bribery,' etc., by declaring that 'any person may be compelled to testify,' etc. We think the words 'offence of bribery,' employed in the thirty-second section, mean all bribery, whether bribery at common law, or under the constitution itself, or any kind of statutory bribery. The learned court was therefore right in saying to the relator that he must testify, and that his testimony could not afterwards be used against him in any judicial proceeding. *But, whether the court was right or wrong in holding that the relator was thus protected by the section under consideration, the decision itself would have shielded him. No court would*

*permit the testimony of a witness, truthfully given under such circumstances, to be afterwards used against him in any judicial proceeding."* (Italics supplied.)

Thus, in holding that the witness Brentari will not incriminate himself by any answers which he might give at this deposition because of the protection afforded by article III, section 32, it would appear that we are, in effect, irrevocably vesting him with immunity from any prosecution based on his answers truthfully given, which immunity cannot later be withdrawn, even on appeal to a higher court. This is an additional safeguard accorded the witness, and should afford him solace, as it does the court, with the knowledge that if this be an erroneous arrogation of authority, no prejudice shall result. See also Commonwealth v. Kilgallen, supra, at pages 326-328.

*2. The Statute of Limitations Further Protects the Witness.*

Turnpike argues that another cogent reason why Brentari is not entitled to a protective order under his claim of privilege is that the statute of limitations has run on any criminal charge which could possibly arise from the subject matter of this action. As a background to this phase of the discussion, it is necessary to understand that Brentari was at one time a purchasing agent for the Pennsylvania Turnpike Commission, and that he testified as a witness before the special investigatory grand jury which sat in this county in 1956 for the purpose of investigating the so-called "Turnpike scandals". In the course of his testimony before the grand jury,[2] Brentari stated that a fellow employe had told

---

[2] This grand jury testimony was read into the record at the criminal trial of Brentari on a charge of conspiracy, Dauphin County Court of Quarter Sessions, no. 114, June sessions, 1957, discussed infra.

him that one Thomas J. Evans, the then Chairman of the Pennsylvania Turnpike Commission, was "interested" in the Prep Contracting Company. Brentari also admitted that he had accepted a "gift" of $300 from Prep at or about Christmas, 1954, and a similar "gift" in the sum of $100, at or about Christmas, 1955. After receiving these sums, and also pursuant to the suggestions as to Chairman Evans' "interest" in Prep, Brentari "saw to it" that Prep's company received contracts for the furnishing of cinders to be used in the Turnpike's winter operations.

Following its investigations, the special grand jury returned recommendations for prosecution of various Turnpike officials and employes, including Brentari, and other persons, including Prep, for their participation in the fraudulent machinations which the grand jury had brought to light. Although not fully called to our attention by counsel either in their briefs or argument, our independent investigation indicates that in the Dauphin County Court of Quarter Sessions, in which the members of this court also sit, Brentari was indicted at nos. 112, 114, 117, 118, 119, 120, 121 and 125, June sessions, 1957. When called for trial, demurrers were sustained to the evidence and the charges dismissed in the cases at nos. 114, 119 and 120. Upon defendant's motions, the indictments were quashed at nos. 117, 118, 121 and 125, because all of these prosecutions were instituted after the statute of limitations had expired for the particular offenses involved. This leaves open and outstanding against Brentari only the indictment at no. 112, June sessions, 1957, this being a charge of conspiracy against Brentari and 11 other defendants (Prep not being among them) involving alleged dealings with the Emco Supply Company, Inc., and B. & W. Trading Corporation pertaining to the sale of calcium chloride to the Turnpike. It appears that the matters involved in the latter indictment are

not in any way connected with or related to the subject matter of this assumpsit action brought by Prep.

It is evident that any criminal offenses which would or could have been committed by Brentari in connection with his dealings with Prep were completed at or prior to the time of Brentari's appearance before the special grand jury in 1956. Also, we must assume that all indictments which could have been laid for those offenses have been brought and disposed of, as above mentioned. Turnpike has suggested, again without refutation from Brentari, that the only possible offenses for which he could have been indicted were perjury, conspiracy or bribery and we note that the statute of limitations as to any of these offenses has now expired. Parenthetically, we also note that the longer six-year statute of limitations applicable to indictments against public officers has been expressly held not applicable to employes of the Pennsylvania Turnpike Commission: Commonwealth v. Morrison, 71 Dauph. 268 (1958).

It is generally well established in our law that: "A crime erased by lapse of time exists no longer. There is therefore no criminal fact to be privileged from disclosure. A legal limitation of the time of prosecution is in practical effect an expurgation of the crime; so after the lapse of the time fixed by law the privilege ceases": 8 Wigmore, Evidence, §2279. This rule appears to have been recognized and followed without exception in all of our Federal courts: Brown v. Walker, 161 U. S. 591 (1896) ; In re Kittle, 180 Fed. 946 (S. D. N. Y., 1910) ; O'Neil v. O'Neil, 299 Fed. 914 (D. C. Cir., 1924) ; Moore v. Backus, 78 F. 2d 571 (7th Cir., 1935) ; Hale v. Henkel, supra; Robertson v. Baldwin, 165 U. S. 275 (1897).

As concisely stated in Brown v. Walker, supra, at page 598:

". . . if a prosecution for a crime, concerning which the witness is interrogated, is barred by the statute of limitations, he is compellable to answer."

The only distinction made in the Federal cases is that the opponent of the privilege has the burden of proof with respect to the usual condition upon which the running of the statutory period depends, namely, that no prosecution has been begun within the time, and that there are no open indictments still outstanding against the claimant of the privilege: Moore v. Backus, supra, at page 577, and cases therein cited. Our judicial notice, taken at counsel's suggestion, indicates that this burden has been met, with the exception of the indictment still open at no. 112, June sessions, 1957. However, we are of the opinion that our direction to Brentari to answer the questions propounded him in this discovery proceeding could not possibly incriminate him, nor prejudice him in that criminal action still pending. Additionally, any such questions would not meet the test of relevancy and substantial aid prescribed by Rule 4007(a), as discussed infra, and would be objectionable for that reason alone. However, if any question is propounded to Brentari in the taking of this deposition, the answer to which he reasonably feels would prejudice him in the defense of the charges at no. 112, June sessions, 1957, and if such question is not protected by article III, section 32, because it does not pertain to bribery or corrupt solicitation, he may refuse to answer that question on the ground of self-incrimination if his counsel has not already objected on the ground of relevancy. We shall rely upon counsel to cooperate so that the questioning of Brentari is kept within the proper bounds, and if any disputes arise which cannot be resolved, it is our direction that the deposition be concluded insofar as possible in accord with this opinion, and that any controversial questions be brought to the court's further attention by the appropriate motion under the discovery rules.

We may not end this portion of our discussion without observing that Pennsylvania may be in the minor-

ity with respect to the foregoing rule that the passage of the statute of limitations erases the crime and vitiates the claim of privilege against self-incrimination. Although not called to our attention by either counsel, our independent research discloses McFadden v. Reynolds, an 1887 Pennsylvania Supreme Court case, reported only in the "side reports" at 20 W. N. C. 312. There, the court held that the privilege against self-incrimination is not withdrawn by the running of the statute of limitations for the crime involved, applying this rationale for its conclusion:

"We are not prepared to hold that where a witness is asked upon the stand to say whether he has committed a crime, he shall be compelled to do so simply because he may, if a prosecution for that crime is subsequently instituted against him, plead the Statute of Limitations in defence. It seems to us he is protected against criminating himself in such a manner as to subject himself even to a prosecution. Were he compelled to answer the question as a witness his answer would be sufficient, when testified to by others who heard it, to lay before a magistrate who could commit him to prison to answer the charge in default of bail. It would be also sufficient to place before a grand jury who could find an indictment against him upon mere proof of his extorted answer. He could thereupon be compelled to appear in a criminal court to answer the charge, and would be obliged to employ counsel to defend him. He would necessarily undergo all the expense and trouble besides suffering the shame, perhaps the ignominy, of defending himself against a criminal accusation made by his own mouth against himself because he was coerced to do so by the peremptory order of a Court clothed with power to commit him indefinitely to prison for contempt in case of disobedience. At least he would be obliged to plead the statute of limitations, and if the crime were infamous an acquittal on

such a plea would be scarcely better than a conviction.

"We have never held that a witness might be compelled to criminate himself in such circumstances, and with our present views we decline to hold so now. The first assignment of error is therefore dismissed." (p. 313).

We have found no more recent Pennsylvania appellate cases reaching the same conclusion, and in fact, a possible contrary conclusion is revealed in an obiter statement found in Gagliardi Unemployment Compensation Case, 186 Pa. Superior Ct. 142, 146 (1958), regarding a claimant who refused to answer questions on cross examination on the basis of a plea of self-incrimination: "Even if he were guilty of a crime the statute of limitations presumably would have run."

However, the McFadden decision has been followed in two recent lower court opinions, one from Allegheny and the other Philadelphia County: Rosenbaum Co. v. Tomlinson, 7 D. & C. 2d 500 (1956); Putnik Travel & Tourist Agency v. Goldberg, 17 D. & C. 2d 590 (1958). Both of these cases dealt with discovery motions for protective orders, as in the case presently before us. In relieving defendant in each case from giving his deposition on the ground that the answers elicited might incriminate him, even though the statute of limitations had ostensibly run on any such crime, our brethren of Allegheny and Philadelphia Counties applied the ruling and rationale already quoted from the McFadden case, without significant additional discussion or citation of other authority.

Having examined this authority contra our present holding, we think the present case may be distinguished from such rulings on the grounds: (1) as heretofore illustrated, the witness is here accorded immunity from prosecution under article III, section 32, of the Constitution, a decisive element not presented in the cited cases; and (2) in all of the cases contra, while the

statute of limitations had run, there was no suggestion that indictments had been brought against the witness and the prosecutions terminated in his favor, as we have here with the witness Brentari.[3] For these reasons, we do not feel that our conclusion here is contrary to, and actually, may be distinguished from the conclusion reached by the Pennsylvania Supreme Court in McFadden v. Reynolds, supra.

Subject to the limitations as to relevancy and the privilege he may exercise only in connection with the matter at no. 112, June sessions, 1957, we thus conclude that the running of the statute of limitations and the prior disposition of all other outstanding indictments against Brentari furnish additional reasons why his claim of privilege is without merit.

### 3. Brentari Has Waived the Privilege.

Turnpike also suggests that Brentari has waived the privilege against self-incrimination by the testimony which he gave before the investigatory grand jury, previously discussed. It is true that the privilege must be specifically asserted by the person claiming its benefit, and that once he has testified as to incriminating matters, he is deemed to have waived the privilege, and cannot thereafter claim its benefit: 8 Wigmore, Evidence §§2276, 2268; Rogers v. United States, 340 U. S. 367 (1951); Commonwealth v. Hargreaves, 50 D. & C. 641 (1944); Commonwealth v. Butler, 171 Pa. Superior Ct. 350 (1952). Our examination of the testimony given by Brentari before the investigatory grand jury, including but not limited to what was read into evidence at his criminal trial, reveals that he gave all of his testimony, pertaining to the alleged bribes,

---

[3] McFadden ignored the fact, as did the lower courts following it, that as a practical matter, prosecution for a crime barred by the statute of limitations is unlikely, in view of the action for malicious prosecution which would probably follow on its heels.

as well as other matters, without at any time claiming the privilege against self-incrimination.

The Pennsylvania cases clearly establish that a witness who would claim the protection of article III, section 32, must first have invoked the constitutional privilege of article I, section 9, against self-incrimination, and must thereafter give his answers after specific instruction that same will be protected under article III, section 32: Commonwealth v. Richardson, 229 Pa. 609 (1911); Commonwealth v. Butler, supra. Therefore, Brentari cannot now argue that any testimony given before the investigatory grand jury was subject to the protection of article III, section 32, for the reason that he gave such testimony voluntarily, rather than under compulsion. His previous waiver of the privilege against self-incrimination in connection with these matters furnishes strong additional reason why Brentari is now without standing to invoke it in this assumpsit action.

*4. Written Interrogatories v. Oral Examination.*

In support of his motion for a protective order, Brentrai also urges that he could be fully protected if he were deposed by written interrogatories rather than upon oral examination, such procedures being equally available under Rule 4007. The witness argues that the court would thus be able in advance to determine which questions were proper, and thereby obviate the danger of violating the privilege against self-incrimination. In view of our foregoing discussion, we think that the argument regarding privilege is moot. However, we still have the consideration that the witness may be protected from discovery under Rule 4011 if it ". . . (b) causes unreasonable annoyance, embarrassment, expense or oppression to the deponent or any person or party . . ."

Initially, we note that the usual practice of submitting written interrogatories to an adverse party under

Rule 4005, whereby the interrogated party thereafter has 20 days to assist his attorney in the preparation of written answers which are then verified by the party and served upon the party seeking discovery, is not here available because Rule 4005 only permits written interrogatories to "an adverse party", and not to witnesses: Goodrich-Amram, §4003(a)-10; 5 Anderson Pa. Civ. Pract., pp. 138, 154, 155. Thus, the only choice available is whether the witness should submit to deposition upon oral examination or by written interrogatories.

Under these circumstances, it is not apparent to the court how the submission of the witness to deposition on oral examination will be any more annoying, embarrassing, expensive or oppressive to him than if he submits to such deposition upon written interrogatories. In either event, he will, at an appointed time and place, have to appear before a stenographer and answer questions under oath. It appears from the prior deposition that Brentari resides in this area, and that he is employed by a local firm, and that it therefore should cause him no unusual hardship to appear locally, as he was previously requested to do, for deposition upon oral examination.

If the deposition is by written interrogatories, Brentari and his counsel will have opportunity to prepare themselves in advance, but, in fairness to defendant, this is the very reason that the latter has elected the method of deposition upon oral examination. However, defendant will not have undue advantage here, because Brentari and his counsel must be aware of the scope of the inquiry in view of the long history of this, and the related criminal cases, as well as the questions which were already put to the deponent at the time of the first attempt at deposition on January 12, 1962.

Under these circumstances, we believe that defendant is entitled to the deposition upon oral examination.

We note generally a trend of liberality in discovery matters and in the interpretation of discovery rules by the various courts of Pennsylvania. This court, speaking through Judge Homer L. Kreider, so indicated in granting plaintiff the right to depose defendant upon oral examination in the case of Cloder v. Horvath, 27 D. & C. 2d 180 (1962), which in many respects greatly extended a narrower view previously evidenced by us in Cassell v. Morrone, 73 Dauph. 324 (1959).

Any trial lawyer will agree that written interrogatories for the examination of a witness, as compared with oral depositions, are "clumsy and restrictive", as they were characterized by Judge Henninger in Strasser v. Pennsylvania Spool and Equipment Co., 9 D. & C. 2d 714, 716 (1956). Reaching a similar conclusion were: Knappenberger v. Feldman, 6 D. & C. 2d 728 (1956); Frantz v. Erickson, 11 Cumb. 95 (1960); Wright v. Philadelphia Transportation Company, 24 D. & C. 2d 334 (1961); Abrams v. Lapidus, 2 D. & C. 2d 66 (1955).

It is well stated in Goodrich-Amram, §4003(a)-6 that: "Oral examination bears at least some resemblance to the actual interrogation of a witness on the stand; the stilted, formal, artificial phraseology of interrogatories and cross-interrogatories bears no semblance of reality. No kind of skillful staging at the trial can breathe the breath of life into the kind of questions and cross-questions which necessarily must be framed for use in interrogatories."

### 5. The Requirements of Rule 4007(a).

Besides the arguments as to alleged invasion of privilege, and unreasonable hardship, already disposed of, the only other matter which would preclude this deposition would be that the scope of the deposition is not relevant to the subject matter involved in the action, or that it will not substantially aid in the preparation or trial of the case by defendant, these prohibitions

being evidenced in Rule 4007(a). In view of the contents of defendant's counterclaim, and the examples of the questions sought to be asked the witness as found in the attempted deposition of January 12, 1962, it is the court's conclusion that these matters are relevant and germane to the issues at hand, and that answers furnished by Brentari would substantially aid defendant in its preparation for trial. It has been well stated that, "It is often difficult, if not impossible, for a court to conclude in advance of trial, whether a matter inquired into on depositions 'will substantially aid in . . . the preparation or trial of the case'": Pottstown Lincoln-Mercury, Inc. v. Montgomery County Auto Sales, Inc., 2 D. & C. 2d 396, 399 (1954). Also, "It is difficult to determine what evidence is relevant in advance of the trial and any doubt on that point should be resolved in favor of relevancy": Rush v. Butler Fair and Agricultural Assn. (No. 3), 17 D. & C. 2d 250, 257 (1958). Likewise, Brentari's argument that he has not been advised as to the scope of the deposition is not well taken, first because of the background and circumstances of this case, which in and of themselves should have placed the witness and his counsel on notice of the scope of the inquiry. Further, the discovery rules do not require that the notice of deposition set forth with specificity the scope of the inquiry, so long as the tests of relevancy and substantial aid are met in the actual taking of the deposition as required by Rule 4007(a). And defendant Turnpike did describe the scope of the deposition in its answer to Brentari's motion for the protective order when it stated as follows:

"Wherefore defendant requests that the Court direct the witness, August H. Brentari, to testify on the subject matter of payments received from plaintiff and the award of cinder contracts to plaintiff and companies in which plaintiff or his family had an interest, while Brentari was purchasing agent for the Commission, under penalty of contempt for refusal to answer."

*6. Inquiry Into Matters Within Defendant's Knowledge.*

Brentari's last objection to this deposition is that defendant already has knowledge of the matters upon which it is sought, or that same is readily available to defendant, primarily from the testimony which Brentari and other witnesses gave before the special investigatory grand jury. However, so long as the tests of relevancy and substantial aid are met, as prescribed by Rule 4007(a), a deposition may not be refused on the ground that the party seeking it already has knowledge of the matters to which the deposition will pertain.

"While certain information sought may be as much within the knowledge of plaintiff as of defendant, under the new rules mere knowledge of the inquirer is not a bar to inquiry. The present test is, will discovery be of substantial aid to the inquirer in preparing the trial of his case? It is not controlling that the questions may seek to discover 'matters solely of defense'. Inquiry is not to be refused for such reason . . .": Robbins v. Lashner, 1 D. & C. 2d 302, 308 (1954); Cloder v. Horvath, supra, at page 372.

And although not directly raised by Brentari, it might be apposite for us also to observe: "When the standards of relevance and substantial aid are met no objection [to Discovery] can be made on the ground that the moving party is seeking a script for trial": 5 Anderson Pa. Civ. Pract., 1962, p. 64; Robbins v. Lashner, supra; Cloder v. Horvath, supra, at page 371.

*7. Dauphin County Rule 10.2.*

In conclusion, we wish to call attention to Rule 10.2 of the Rules of Dauphin County Court, pertaining to "Depositions and Discovery", as follows: "The party opposing any deposition, discovery, interrogatory or question shall have the burden of showing why the same should not be allowed." Neither in his brief, nor at argument, has Brentari's counsel offered us any case

or other authority in support of his position opposing the taking of this oral deposition. No authorities have been called to our attention which would contravene the cases cited and conclusions heretofore reached. Upon careful consideration of the brief and arguments submitted on behalf of Brentari, we conclude that he has not met the burden of showing why his deposition upon oral examination should not be allowed. Accordingly, we enter the following

*Order*

And now, November 19, 1962, the motion for protective order heretofore filed on behalf of one August H. Brentari is hereby overruled, and the said Brentari is directed to submit to deposition upon oral examination forthwith, at a time and place agreed upon by all counsel, and to then and there make answer to those questions previously propounded him at the deposition of January 12, 1962, as well as to questions pertaining to the subject matter of payments received from plaintiff and the award of cinder contracts to plaintiff and companies in which plaintiff or his family had an interest, during the period Brentari was purchasing agent for defendant Pennsylvania Turnpike Commission, under penalty of contempt for refusal to answer; subject, however, to the limitation set forth in this opinion.