GEORGE D. BASHAM ET AL V. BAYARD MARTIN SMITH ET AL.

No. A-2650. Decided July 5, 1950.
Rehearing overruled October 4, 1950.
(233 S. W., 2d Series, 297.)

*Mike McKool,* of Dallas, for petitioner.

The Court of Civil Appeals in holding that the debt of the petitioners against the Independent Executor of the estate of Mrs. Aldredge, deceased, was recognizable only in the probate court and that the judgment of the trial court was fundamentally without support in law. Woods v. Bradford, 284 S. W. 673; Abilene Ind. Tel. and Tel. Co. v. Williams, 111 Texas 102, 229 S. W. 847; Anderson v. Hunt, 122 S. W. 2d 345.

*Bonney, Paxton and Wade* and *J. B. Look, Jr.,* all of Dallas, for respondents.

If the statement by the Court of Civil Appeals that this

action was cognizable only in the probate court and that the judgment of the trial court was fundamentally without support in law and error it was harmless. And that court was correct in its holding that treble damages and attorney's fees in a rental overcharge case under the Housing and Rent Act do not survive the death of the wrong-doer. Patton v. Brady, Extr. 184 U. S. 608; Johnson v. Rolls, 97 Texas 453, 79 S. W. 513; Wright's Admr. v. Donnell, 34 Texas 291.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

The Court of Civil Appeals reversed and remanded this cause in which the petitioners, Basham et al., as plaintiffs, had judgment on a verdict in the district court for statutory triple damages and attorney fees under U. S. C. A., Title 50 Appendix secs. 925 (e) and 1895 by reason of alleged rental overcharges collected by their landlady, a Mrs. Aldredge, testatrix of the defendant-respondents, Bayard Martin Smith and wife, who were respectively independent executor and trustee under the will. 227 S. W. 2d 853. The suit was begun against the testatrix, but on her death before trial the respondents were substituted as defendants in a representative capacity, and upon their filing what was in effect an answer on the merits, judgment was rendered against them as executor and trustee respectively. While the trial court record reflects the status of respondent Bayard Martin Smith as "executor" only, it was made to appear without controversy upon the appeal that his true status was that of independent executor.

The reversal below rested primarily on the ground that the claim should have been first presented in probate and, under Art. 3314, Vernon's Annotated Civil Statutes, could not be enforced by independent suit in the district court, "because plaintiffs have neither alleged nor proved that the defendants (trustee, executor or devisees) had received any property of the deceased charged with the statutory lien for payment of their debts against the deceased." Though with reservations as to whether the court's actual disposition of the appeal was not justified on other grounds, we granted the writ to review the ruling mentioned because of its importance in daily practice.

The ruling, as respondent in effect now concedes, is erroneous. The action was indisputably one against an independent executor in charge of an estate, which is altogether different from a claim against an estate being administered by a non-independent executor or an administrator or a suit against heirs or beneficiaries of a will to reach property of the estate in their

possession. The "applicable statute" is not Art. 3314, supra, which deals with the vesting of estates of decedents subject to their debts, but Art. 3437, which immediately follows the article providing for independent administration under a will and reads:

Art. 3437. Creditor may sue executor.—"Any person having a debt or claim against the estate may enforce the payment of the same by suit against the executor; and, when judgment is recover against the executor, the execution shall run against the estate of the testator in the hands of the executor that may be subject to such debt. The executor shall not be required to plead to any suit brought against him for money until after one year from the date of the probate of such will."

■ Referring to this and other articles of the same chapter, this court has said: "The statutes do not contemplate that the estate should be entirely withdrawn from the jurisdiction of the probate court, but that the appointment of an independent executor withdraws the estate from the supervision and control of the probate court, except in so far as some other statute may authorize the court to exercise its jurisdiction; and so long as it remains in the hands and under the control of the executor, the probate court has no jurisdiction to approve a claim against the estate. * * * The district court or county court, and not the probate court, has jurisdiction of all claims against the estate, as in any other cause of action not regulated by a special statute." Rowland v. Moore, 141 Texas 469, 174 S. W. 2d 248. Art. 3437, of course, restricts execution to assets of the estate in the hands of the independent executor and in the instant case will be read into the judgment against the "executor", so there is no possibility of the latter being liable in his individual capacity, while as to Mrs. Smith, who is trustee, she would obviously be entitled to reimbursement from the trust estate for any liability adjudged against her. Without the formalities incident to a claim against an estate represented by an administrator or non-independent executor and without reference to the conditions referred to by the court below, the claimant may properly sue an independent executor forthwith in the district or county court, according to the character of his claim, subject to the right of the defendant. which may be waived, to abate the suit until expiration of a year after the will was probated. Anderson v. Hunt, Tex. Civ. App.. 122 S. W. 2d 345, er. ref; Ewing v. Schultz, Tex. Civ. App.. 220 S. W. 625, er. ref.; Kopplin v. Ewald, Tex. Civ. App., 70 S. W. 2d 608, cited in Rowland v. Moore, supra; Hutcherson v. Hutcherson, Tex. Civ. App., 135 S. W. 2d 757, er. ref. The answer of the defendants

in the instant case was a waiver of any right to abate the suit for a year. The reversal below cannot therefore be sustained on the ground that the suit as pleaded and tried was not a proper one for the district court.

■ Petitioner contends that the court below erred further in not dismissing respondents' appeal, but here we do not agree. The argument is that the appeal was made and the appeal documents filed too late, since the corresponding periods began to run from June 14, 1949, that is, 30 days after the filing of respondents' amended motion for new trial on May 14, which petitioners say was never "presented" under Rules of Civil Procedure, Rule 330(j), within the 30-day period and therefore stood overruled by operation of law on June 14, although it was actually argued thereafter on June 18 and an order overruling it entered on June 21. The original appeal record not showing whether the motion was "presented" before June 14, the court below permitted the appellants (respondents here) to bring up a supplemental record to clarify the point. This they did by procuring on September 24 and bringing up an order of the trial court which placed in the minutes as of June 7, or *nunc pro tunc,* an entry reciting that the motion was "presented" in open court on June 7 (only 24 days after it was filed) and thereafter taken under advisement from day to day until it was argued on the 18th and overruled on the 21st. The pleadings and evidence in connection with the nunc pro tunc order were also brought up. The procedure adopted by the Court of Civil Appeals was well within its powers, and after review of the supplemental record, we concur in that court's view that the amended motion for new trial should be taken as "presented" on June 7, so that it was not overruled by operation of law on June 14, the 30th day of its filing. While in such cases the safer practice for the party seeking a new trial is to procure a written agreement from opposing counsel, who ordinarily should not refuse it, we cannot say that the nunc pro tunc order was arbitrary or ought otherwise to have been disregarded.

■ A more difficult point is the additional ground for reversal taken by the court below, that, the federal statutes omitting provision to the contrary, the death of Mrs. Aldredge, who, as landlord, collected the rental overcharges but died before the trial, destroyed the cause of action of petitioners for triple damages and attorney fees under the common law maxim, *actio personalis moritur cum persona.* While this subject of survival enjoys the doubtful honor of being among the more confused in the law, our own opinion coincides with the conclusion of the Court of Civil Appeals.

No question is raised as to survival of petitioners' right to recover the bare overcharges, if properly established. But the matter of theadditional claim included in "three times the amount" of the overcharge and the attorney fees is something quite different.

The federal law is the ultimate source for determining what is or isn't properly a question of federal law. Looking therefore primarily to it, we conclude that the matter of survivorship of a federal statutory cause of action is a question of federal law, and not the law of Texas, though the latter is the forum and place where the cause of action arose. We, ourselves, have said that in a proceeding in our courts to collect a "civil penalty" under the federal income tax laws, we would determine the meaning of a particular word in the statute by reference to federal decisions. Paddock v. Siemoneit, 147 Texas 571, 218 S. W. 2d 428, 7 A. L. R. 2d 1062. But the federal decisions, including several made in the face of Erie R. Co. v. Tompkins, 304 U. S. 64, 58 Sup. Ct. 817, 82 L. Ed. 1188, 114 A. L. R. 1487, seem to carry the scope of federal authority well beyond the matter of mere interpretation of federal statutes into the field of "consequences" thereof, of matters in which "the desirability of a uniform rule is plain" and into "those areas of judicial decision within which the policy of the law is so dominated by the sweep of federal statutes that legal relations which they affect must be deemed governed by federal law having its source in those statutes, rather than by local law." See Clearfield Trust Co. v. United States, 318 U. S. 363, 63 Sup. Ct. 573, 87 L. Ed. 838; Sola Electric Co. v. Jefferson Electric Co., 317 U. S. 173, 63 Sup. Ct. 172, 87 L. Ed. 165; D'Oench, D. & Co. v. Federal Deposit Ins. Corp., 315 U. S. 447, 62 Sup. Ct. 676, 86 L. Ed. 956; Deitrick v. Greaney, 309 U. S. 190, 60 Sup. Ct. 480, 84 L. Ed. 694; Jackson County v. United States, 308 U. S. 343, 60 Sup. Ct. 285, 84 L. Ed. 313; Awotin v. Atlas Exchange National Bank of Chicago, 295 U. S. 209, 55 Sup. Ct. 674, 79 L. Ed. 1393; Michigan C. R. Co. v. Vreeland, 227 U. S. 59, 33 Sup. Ct. 192, 57 L. Ed. 417, Ann. Cas. 1914c, 176. The court in Gerling (Martin's Admr.) v. Baltimore & O. R. Co., 151 U. S. 673, 14 Sup. Ct. 533, 38 L. Ed. 311, referred to the earlier decision of In re Schreiber (or Schreiber v. Sharpless), 110 U. S. 76, 3 Sup. Ct. 423, 28 L. Ed. 65, in these terms, "In that case, the right in question being of an action for a penalty under a statute of the United States, the question whether it survived was governed by the laws of the United States." This quotation itself survived in B. & O. R. Co. v. Joy, 173 U. S. 226, 19 Sup. Ct. 387, 43 L. Ed. 677. See also 1 Am. Jur., "Abatement and

Revival, Cum. Supp., sec. 157; Bowles v. Farmers Nat. Bank, C. C. A. 6, 147 F. 2d 425; Wogahn v. Stevens, 236 Wis. 122, 294 N. W. 503, 133 A. L. R. 1033. The contrary suggestion in the majority opinion in Stevenson v. Stoufer, 237 Iowa 513, 21 N. W. 2d 287, is vigorously contested by the four dissenting justices. The right of a state forum to determine by its own law questions under federal statutes, such as whether the statute imposed a penalty or not, has been asserted by some state courts, but we believe upon a mistaken idea of the application of Conflict of Laws principles to the relationship between the Federal and State governments. See Bowles v. Barde Steel Co., 177 Ore. 421, 164 Pac. 2d 692, 162 A. L. R. 328; Robinson v. Norato, 71 R. I. 256, 43 Atl. 2d 467, 162 A. L. R. 362; Restatement, Conflict of Laws, 1948 Supp. sec. 2. If the statute in question had contained express provision for survival, the state courts would seem clearly bound to give it effect, just as they would also be bound to look to the federal decisions for guidance in the matter of its meaning. It is no great step thence to say that in the absence of any federal provision on the point, we should, so far as we can, determine the matter of survival by reference to federal decisions.

There is, indeed, a federal statute which provides that: "A civil action for damages commenced by or on behalf of the United States or in which it is interested shall not abate on the death of a defendant but shall survive and be enforceable against his estate as well as against surviving defendants." 28 U.S.C.A. sec. 2404. A predecessor statute of broader scope (28 U. S. C. A. sec. 780a) was yet held by the third circuit in Porter v. Montgomery, 163 F. 2d 211, not to apply to a suit by the Federal Price Administrator for treble overcharges in the sale of goods under one of the two statutes involved in the instant case, for the apparent reason that the action was not for damages but for a penalty. Even aside from this latter question, we believe we may properly say that, as a matter of federal law, though without any federal decision either supporting or contradicting us, sec. 2404 is generally inapplicable to a suit like the instant case. Petitioners sue only as individuals and no part of their recovery inures to the benefit of the United States. The latter doubtless is "interested" in a sense, but the statutory interest is evidently one of the property type, as distinguished from the countless general interests the United States might have, such as the enforcement of federal policy through private action.

What, then, do we understand the federal decisions to reflect on the survival question before us? The Federal Supreme Court seems not to have passed directly upon it, but Porter v.

Montgomery, supra, and Bowles v. Farmers Nat. Bank, supra, both from Circuit Courts of Appeal, have held, on the penalty theory, against survival, as has also in effect the District Court for the Northern District of Texas in Strickland v. Sellers, 78 F. Supp. 274. State courts have contributed their versions of federal law in the same vein, as in Wogahn v. Stevens, supra, and some, like the majority in Stevenson v. Stoufer, supra, have reached the same result by recourse both to their own and federal law. The numerical superiority of available decision closest in point clearly lies with the view against survival. On the other hand, there are earlier decisions, such as Moore v. Backus, C. C. A. 7, 78 F. 2d 571, 101 A. L. R. 379, and Sullivan v. Associated Billposters, etc., C. C. A. 2, 6 Fed. 2d 1000, 42 A. L. R. 503, casting their weight for survival in the rather analogous situation of a private action for triple damages and attorney fees under section 7 of the Sherman Act. Doubtless still further evidence of conflict can be found.

The more recent decisions above mentioned apparently turn on whether the statutory cause of action should be considered "a penalty", and in tracking their search for the meaning of that uncertain term, we encounter what Judge Biggs in Porter v. Montgomery, supra, describes as a "welter of law", in which perhaps the only agreed point is that Huntington v. Attrill, 146 U. S. 657, 13 Sup. Ct. 224, 36 L. Ed. 1123, is of great importance. See 31 Iowa L. Rev. 663. Porter v. Montgomery, however, treats Huntington v. Attrill as little relevant, and we are disposed to agree, considering that it was a case of applying the full faith and credit clause as between states to a judgment of one of them based on a local statute whereby a false statement in a certificate of incorporation imposed liability on the maker for all the corporate debts. In last analysis, the problem is evidently one of common law and, as above indicated, of common law as stated by the federal courts, without reference to the decisions of the state courts. See In re Schreiber; Gerling (Martin's Admr.) v. Baltimore & O. R. Co.; B. & O. R. Co. v. Joy, all supra; U. S. v. Daniel, 6 How. 11, 12 L. Ed. 323; Patton v. Brady, 184 U. S. 608, 22 Sup. Ct. 493, 46 L. Ed. 713; Bank of Iron Gate v. Brady, 184 U. S. 665, 22 Sup. Ct. 529, 46 L. Ed. 739. While the Schreiber case held that, as a result of the common law, causes of action created by federal statutes without provision for survival do not survive, if they are in effect penalties, there is obviously no compelling federal authority that they necessarily do survive, if they are not penalties. In U. S. v. Daniel, supra, the federal Supreme Court, discussing the common law of survival as applied to a damage claim against the

estate of a U. S. Marshal for false executions levied by his deputies during his lifetime, said: "If the person charged has secured no benefit to himself at the expense of the sufferer, the cause of action is said not to survive, but where, by means of the offense, property is acquired which benefits the testator, there an action for the value of the property shall survive against the executor." This was substantially repeated in Patton v. Brady, supra, as follows: "If we turn to the common law, there the rule was that if a party increased his own estate by wrongfully taking another's property, an action against him would survive his death, and might be revived against his personal representative." Bank of Iron Gate v. Brady, supra, which immediately followed Patton v. Brady, was a federal court suit against the estate of the deceased federal collector of Internal Revenue to recover $70.00 illegal taxes paid under protest and also some $6000 damages for injury to plaintiff's business and credit resulting from a distress levy made by the Collector. Applying the common law, it was held that the smaller claim survived as "practically an action in assumpsit for money had and received", but that the claim for damages for the levy did not survive, being merely "a tort by which the estate of the defendant was not increased and the estate of the plaintiff damaged only as an indirect consequence of the alleged wrongful act of the defendant." These ideas, in our view, dispose of the instant case. The claim for the bare overcharges themselves may be said to survive either as an unjust enrichment of the estate of Mrs. Aldredge at the expense of petitioners or as a tort having the same effect. But the claim for attorney fees and additional sums, whether called a penalty or some other name, does not survive, because these sums do not represent any enrichment of the estate of Mrs. Aldredge, who never collected them, or any impoverishment of the petitioners, who never paid them. It would be unrealistic to say that such a claim survives at common law as one founded on contract. An agreement to return what has been illegally collected is far easier to presume than one to pay the same amount three-fold plus attorney fees. As above indicated, we do find it somewhat difficult to reconcile our conclusion with the decisions recognizing survival of private actions under the Sherman Act, or to reconcile the latter with the more recent decisions against survival of actions under the statutes here involved. We may, however, rely on the former to the limited extent that they do not appear to consider the question of penalty, vel non as decisive, while we also lean on the latter to the extent that they reach the same result we ourselves have reached through our application of the Federal Supreme Court decisions last above quoted.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered July 5, 1950.

ON MOTION FOR REHEARING.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

The only point raised in the motion for rehearing, in which the respondents in effect join, is with regard to two of the various separate plaintiffs and petitioners, to wit, George D. and Mildred E. Basham, who had judgment in the trial court for $225.00, by way of triple damages, and for attorney fees. It appears that the respondents have not on appeal contested this award insofar as it allowed these two petitioners the sum of $75.00 for the actual rental overcharge paid by them, but on the contrary, have themselves prayed the Court of Civil Appeals to render judgment for the Bashams in this latter amount. That court, by reversing and remanding the cause generally, omitted to do so, and this omission was, in effect if not directly, complained of in the Supreme Court by both petitioners and respondents. We are now requested to modify our previous judgment of affirmance so as to dispose finally of the Bashams in the form indicated and see no reason to refuse the request. Our previous judgment is accordingly withdrawn. In lieu thereof we now affirm the judgment of the Court of Civil Appeals as to all matters except the claim of petitioners George D. Basham and wife, Mildred Basham. With respect to the latter, the judgment of the Court of Civil Appeals is reversed and judgment here rendered that said petitioners recover of the respondents, Bayard Martin Smith and Katherine Aldredge Smith, as independent executor and trustee, respectively, under the will of Mrs. Katherine Louise Aldredge, jointly and severally, the sum of seventy-five dollars with interest thereon at the legal rate from the date of judgment of the trial court, but that said petitioners, Basham and wife, in all other respects take nothing by their suit. Costs are adjudged against all the petitioners, including the Bashams, jointly and severally.

Opinion delivered October 4, 1950.