**OAK CLIFF BANK & TRUST COMPANY,**
Appellant,

v.

**The AETNA CASUALTY & SURETY COMPANY, Appellee.**

No. 17181.

Court of Civil Appeals of Texas.

Dallas.

Dec. 13, 1968.

Rehearing Denied Jan. 3, 1969.

Charles J. McGuire, of Akin, Vial, Hamilton, Koch & Tubb, Dallas, for appellant.

Lawrence R. Maxwell, Jr., of Bailey, Williams, Weber & Allums, Dallas, for appellee.

BATEMAN, Justice.

The question here is whether the drawee or the drawer shall bear the loss when a forged check is paid by the drawee bank. The appellant Oak Cliff Bank & Trust Company, herein sometimes called "the Bank," paid approximately forty checks aggregating $689.47 bearing the printed signature of The International Union United Automobile Aerospace & Agricultural Implement Workers of America UAW, Local 732, herein called "the Union," and what purported to be the handwritten signatures of Roy J. Dykes, President, and G. C. Fredericks, Financial Secretary. The Bank had been instructed by the Union to pay its checks only when countersigned by both of said officials. Dykes' signature was genuine, but that of Fredericks was forged. All of the checks were payable to Dykes. The Union was reimbursed for the loss by the appellee The Aetna Casualty & Surety Company and assigned the claim to that company. Appellee sued the Bank and recovered on an instructed verdict.

The Bank answered denying forgery of Fredericks' name and alternatively pled acquiescence, ratification and estoppel; also that the Union had been negligent in examining the monthly statements mailed to it by the Bank and that if the Union and Fredericks examined the statements and discovered the alleged irregularities, they failed to notify the Bank promptly; and

that the loss could have been prevented had the Union and Fredericks exercised reasonable care and promptness in the examination of such monthly statements. At the close of the evidence both parties moved for instructed verdict. The court overruled the Bank's motion and sustained that of the appellee.

Appellant contends in its first two points of error on appeal that the trial court erroneously ruled that a depositor is under no duty to examine its statements and cancelled checks within one year from receipt thereof and, therefore, the depositor as a matter of law was not negligent in failing to discover the forged signatures. In its third point appellant complains of being denied the right to have the question of the Union's alleged negligence submitted to the jury. Since the events in question occurred prior to the repeal of the Negotiable Instruments Act and enactment of the Uniform Commercial Code, the rights of the parties must be determined under the former law (Vernon's Ann.Civ.St. Articles 5932 to 5948, inclusive). Section 23 of Art. 5932, V.A.C.S., was as follows:

"Sec. 23. When a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party, against whom it is sought to enforce such right, is *precluded from setting up the forgery or want of authority.*" (Italics ours.)

Appellant concedes that under this statute the general rule is that a drawee bank which pays out money on a forged check must restore the funds to the drawer's account, but contends that appellee "is precluded from setting up the forgery or want of authority" by the Union's negligent failure to examine the statements and cancelled checks returned to it each month by the Bank and to notify the Bank of the forged signatures.

To pass upon the rights of the parties in this respect, it must first be determined whether the depositor owed a duty to examine its bank statements and notify the bank of forged signatures on checks. As said in Liberty State Bank v. Guardian Savings & Loan Ass'n, 127 Tex. 311, 94 S.W.2d 133 (1936):

"The only basis of the plea of estoppel is the finding that the depositor was negligent, and a determination that it was not negligent is necessarily a determination that an estoppel cannot be invoked against it. The principle of estoppel in pais may be invoked against a party only when he has failed to do that which it was his duty to do. He cannot be estopped because of his failure to do that which he owed no duty to do."

Vernon's Ann.Civ.St. Art. 342–711, is as follows:

"A bank may notify a depositor by mail at his address as reflected by the records of the bank to call for cancelled items charged to his account, or may mail such cancelled items to the depositor at such address. No depositor shall be permitted to dispute any charge to his account on the ground that the same is based upon a forged, unauthorized, raised or altered item unless, within one (1) year from the time check was paid, he shall notify the bank in writing that the item in question is forged, unauthorized, raised, or altered."

The trial court evidently felt bound by the dictum in the opinion in Hillcrest State Bank of University Park v. Evis-Southwest, Inc., 402 S.W.2d 276 (Tex.Civ. App., Fort Worth 1966, writ ref'd n. r. e., 409 S.W.2d 841), wherein the court, speaking of Art. 342–711, V.A.C.S. said:

"By the statute a depositor is given the period of one year, as a sort of

statute of limitation. For that period, at least, a depositor is under no duty to examine the statements and cancelled checks and would not be negligent in failing to discover the forgeries."

We do not agree with that rather broad statement, and the Supreme Court, in refusing the writ of error, "no reversible error," declined explicitly to approve or disapprove it, 409 S.W.2d 841. In our opinion the duty arises upon receipt of the statement and cancelled checks and must be performed within a reasonable time thereafter, else the depositor may be held to have acquiesced in the correctness of the statement and the propriety of the charges. It would seem incongruous to us that a depositor would owe no such duty for a period of one year and then, on the 366th day, when the duty first arose, be barred from disputing the charges because he had not sooner examined the statements and cancelled checks and notified the bank of forgeries.

It has long been the rule in this state and nation that a depositor does owe a duty to make such examination and give the bank timely notice of the payment by it of forged checks and that his failure to do so may cause him to be estopped from questioning the correctness of the account rendered to him by the bank. Leather Manufacturer's Nat. Bank v. Morgan, 117 U.S. 96, 6 S.Ct. 657, 29 L.Ed. 811 (1885), quoted from and cited by the Supreme Court of Texas in Weinstein v. National Bank of Jefferson, 69 Tex. 38, 6 S.W. 171, 174 (1887); Southwest Nat. Bank of Dallas v. Underwood, 120 Tex. 83, 36 S.W.2d 141 (1931); Fultz v. First Nat. Bank in Graham, 388 S.W.2d 405, 407 (Tex.1965); 8 Tex.Jur.2d, Banks, §§ 267, 272 and 273, pp. 450, 456 and 457.

A review of these authorities convinces us that the applicable rules are:

(1) The bank is conclusively presumed to know the signature of a depositor and may not charge his account with the amounts of any checks not signed by him, no matter how artistic the forgery and regardless of whether the bank was negligent.

(2) However, the depositor is under a duty to examine his statements and cancelled checks within a reasonable time and notify the bank of any forged signatures.

(3) If the bank proves that the depositor failed to exercise ordinary care in this respect, to the prejudice of the bank, or that the depositor's negligence prevented the bank from promptly and effectively exercising its right to seek and compel restoration and payment from the person committing the forgeries, or from otherwise avoiding or mitigating its loss, then the depositor may be said to have acquiesced in the correctness of the statement rendered by the bank and of charging the checks to his account. The burden of showing such neglect on the part of the depositor and its prejudice or injury is upon the bank.

(4) Nevertheless, even if the bank carries the burden of showing such negligence of the depositor, it may still not avoid its liability to the depositor if it is shown that the bank's officers, before paying the forged checks, could by proper care and skill have detected the forgeries, the burden of showing which, of course, rests upon the depositor.

Since it cannot be said to appear without dispute, or as a matter of law, that the Bank's officers could by proper care and skill have detected the forgeries, thus bringing the case within the fourth numbered rule stated above, that question as well as the question of the Union's alleged negligence were material issues which should have been submitted to the jury. Therefore, the first, second and third points of error are sustained.

By its fourth point of error the appellant complains of the refusal of the trial

court to sustain its motion for instructed verdict. In this connection appellant says that the evidence showed that the Union, while possessing knowledge that one of its officers was drawing on its checking account by means of checks bearing a forged countersignature, notified the Bank of its acquiescence therein, thereby estopping the Union as a matter of law from complaining of payments made by the Bank thereafter on checks bearing said forged countersignature. There was evidence that prior to the presentation of the checks in question six other checks had been cashed by the Bank purporting to contain the authorized signatures of Roy J. Dykes, who was then the Financial Secretary of the Union, and Larry W. Fielder, its then President. One of the Bank's officers notified the Union that these checks had been presented and payment refused because Fielder's signature seemed to have been forged. The officer intimated that the Bank thought that Dykes was the forger. Nevertheless, other officers of the Union advised the Bank officers that "everything had been worked out and that it was all right." Thereafter Dykes was elevated to the presidency.

Apparently, the Bank's attitude is that these facts excused it from the rule of liability for cashing forged checks from that time forward; that the Union was forever estopped from complaining of its cashing of checks bearing forged signatures, and that this appeared as a matter of law, entitling appellant to an instructed verdict in its favor. We do not agree with appellant. As appears from what we have said above, the responsibility of both parties for the loss involved depended upon the resolution of controverted fact issues. Neither party was entitled to an instructed verdict. Therefore, appellant's fourth point is overruled.

The judgment is reversed and the cause remanded for trial.

Reversed and remanded.