**FIRST NATIONAL BANK OF KERRVILLE, Appellant,**

v.

**Estate of Rubelle HACKWORTH, Lena Rabensburg and Mattie B. Denson, Appellees.**

No. 04–81–00259–CV.

Court of Appeals of Texas, San Antonio.

Feb. 29, 1984.

Rehearing Denied May 29, 1984.

Darrell Lochte, Kerrville, Stanley E. Crawford, Jr., Pat Sheehan, Cox & Smith, San Antonio, for appellant.

Richard F. Jacobs, David M. Ward, Wilson & Grosenheider, Austin, E. Bruce Curry, Kerrville, for appellees.

## OPINION

BUTTS, Justice.

The First National Bank of Kerrville appeals from a judgment following a jury trial in favor of the estate of Rubelle Hackworth, and the representatives of the estate, Lena Rabensburg and Mattie Denson. The court trebled actual damages of $53,-480.00 and awarded attorney's fees as provided by TEX.BUS. & COM.CODE ANN. § 17.50 (Vernon Supp.1982–1983). It further awarded pre-judgment interest trebled. We affirm in part, as reformed, and reverse and render in part.

The evidence established that Rubelle Hackworth, who maintained a checking account with the defendant Bank, brought suit against it to recover $53,480.00, the sum she claimed the Bank wrongfully paid from her account when it honored four checks in May, 1978. She claimed three of the checks, totalling $33,480.00, were forged, and the fourth was altered from $20.00 to $20,000.00. The record shows the two accused of committing the forgeries and alteration were Ruth E. and Bob Martin, employees of the elderly Hackworth. After she filed suit, but before trial, Hackworth died. Her estate was substituted as plaintiff.

■ The Bank assigns thirty-seven points of error, many of which directly or indirectly challenge the applicability of the Texas Deceptive Trade Practices Act. We sustain point of error seven: that the cause of action Rubelle Hackworth possessed, if any, to recover treble damages and attorney's fees as authorized by the Deceptive Trade Practices Act, § 17.50, was extinguished upon her death and did not survive in favor of her estate or representatives.

■ The survivability of a cause of action is dependent on whether the cause is controlled by common law principles or a statute which provides for survival. *United States Casualty v. Rice*, 18 S.W.2d 760, 761 (Tex.Civ.App.—Dallas 1929, writ ref'd). The common law is the applicable rule of decision unless directly supplanted by a survival statute. *Id.* At common law, ac-

tions affecting primarily property and property rights survived, whereas an action asserting a purely personal right terminated with the death of the aggrieved party. *Johnson v. Rolls*, 97 Tex. 453, 79 S.W. 513, 514 (1904). The right to recover punitive damages is considered a purely personal right. *Scoggins v. Southwestern Electric Service Co.*, 434 S.W.2d 376, 379 (Tex.Civ. App.—Tyler 1968, writ ref'd n.r.e.).

■ Damages allowed as punishment to the wrongdoer and not as compensation for actual damages suffered are punitive in nature. *Burlington-Rock Island Rail Co. v. Newsom*, 239 S.W.2d 734, 737 (Tex.Civ. App.—Waco 1951, no writ). The conceptual intendment of punitive damages is to protect the interwoven interests of the aggrieved party and the general public by setting an example which deters the defendant and others from the commission of similar offenses. *J.S. Abercrombie Co. v. Scott*, 267 S.W.2d 206, 212 (Tex.Civ.App.— Galveston 1954, writ ref'd n.r.e.).

The underlying purposes of the DTPA are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, breaches of warranty, and to provide efficient and economical procedures to secure such protection. *Woods v. Littleton*, 554 S.W.2d 662 (Tex. 1977); § 17.44, *supra*. In order to better effectuate these purposes the Legislature created a private cause of action for treble damages and attorney's fees. *Woods v. Littleton, supra* at 670; § 17.50, *supra*. In discussing treble damage liability the Supreme Court stated in *Pennington v. Singleton*, 606 S.W.2d 682, 690–91 (Tex. 1980):

> Another purpose of liability in excess of actual damages is to deter violations of the act.... Additionally, not only the defendant, but other sellers must be discouraged from deceptive and misleading trade practices.

An award of treble damages and attorney's fees pursuant to § 17.50, *supra*, is clearly punitive in nature. *See Singleton v. Pennington*, 568 S.W.2d 367, 376 (Tex.Civ.App.

—Dallas 1977), *rev'd on other grounds*, 606 S.W.2d 682 (Tex.1980).

 The Deceptive Trade Practices Act does not provide for survivability of a decedent's cause of action. In ascertaining the intent of the Legislature we must consider the existing condition of the law at the time of the statutory enactment with respect to the established rules applicable to its subject matter. *State v. Dyer,* 145 Tex. 586, 200 S.W.2d 813, 815 (1947). Statutes are presumed to be enacted by the Legislature with full knowledge of the existing condition of the law and subject thereto unless the contrary is clearly demonstrated. *Allen Sales & Servicenter, Inc. v. Ryan,* 525 S.W.2d 863, 866 (Tex.1975). The failure of the Legislature to provide for the survival of the statutory penalty requires the implementation of common law principles. *Johnson v. Rolls, supra,* 79 S.W. at 514.

 We hold the cause of action, if any, of Hackworth under the DTPA did not survive. We further hold the estate and representatives of her estate cannot recover in this action under the DTPA because they are not "consumers" as defined in § 17.45(4): "[A]n individual, partnership, corporation, or governmental entity who seeks or acquires by purchase or lease, any goods or services." Compare this statement (on survival of a cause of action under the Act) in *Mahan Volkswagen, Inc. v. Hall,* 648 S.W.2d 324, 334 (Tex.Civ.App.—Houston [1st Dist.] 1982, no writ) (on motion for rehearing):

> After considering the motions for rehearing, we have concluded our prior holding was in error, insofar as it approved a treble recovery of damages under the wrongful death statute, and we hold that while the plaintiffs were entitled to recover in their own right under the wrongful death statute, that was not a cause of action which survived to them under the provisions of article 5525. [In *Mahan,* treble damages were awarded under the DTPA § 17.50.]

Additionally, in this case the award of attorney's fees rested entirely upon § 17.50 of the Deceptive Trade Practices Act. Therefore we sustain the objection to the award in point of error thirty-three. We further sustain point of error thirty-one in which the Bank argues the pre-judgment interest awarded by the court should not have been trebled under the Act.

We have heretofore stated that appellees were not consumers under the Act. We do not here determine whether Hackworth was a "consumer" for purposes of the Act, in view of our holding that the cause of action, if any, did not survive her death. Points of error four, five, and six are thus sustained as to appellees' lack of "consumer" standing.

Other challenges to the sufficiency of the evidence to show liability under the Act are rendered merely theoretical by our ruling, and we do not address points of error seventeen through twenty-two, twenty-six through twenty-nine, and point of error thirty-two.

 The Bank argues special issues one and two should not have been submitted to the jury because no evidence or insufficient evidence existed to show the three checks were forged (special issue one) and the fourth one altered (special issue two). The issues inquired whether the checks were forged and altered. The jury found they were.

The Bank and appellees each presented the testimony of a qualified expert. The appellees' expert, a former officer with the Austin Police Department who worked in "forgery" for eighteen years, testified that three of the checks were forgeries and one was altered. He made comparisons with the genuine writing of Hackworth and stated his conclusion to be "beyond a reasonable doubt." The Bank offered the testimony of an examiner of questioned documents, who also possessed extensive qualifications. Her conclusion was that the body of each of the four checks was written by Ruth Martin and that Hackworth signed all of them. She did not believe the checks were forged or altered. The direct and cross-examination of each of the hand-

writing experts consumed much time at trial and many pages of the statement of facts. The jury examined and compared some of the evidence in the courtroom and took the evidence into the jury room. It was never questioned that the four checks at trial were not in fact the subject matter of the suit. No one ever denied the checks in court were true copies of the checks claimed to be altered and forged. What appellees were bound to prove to the satisfaction of the jury by a preponderance of the evidence was that three of the checks had been forged and the fourth one altered.

In addition to the experts' statements regarding the four checks, the Bank's vice-president, Joe C. Mosty, recounted, when questioned by counsel for the Bank, the circumstances of Hackworth's visit to the Bank on July 5, 1978. His conversation with her at that time resulted in confirmation by her not only that one altered check had been charged against her account, but discovery that three allegedly forged checks had been also charged. Further, Mosty called the police to the Bank to investigate the case. The Bank argues on appeal that Mosty's testimony of his conversation with Hackworth is hearsay. We find no merit in the Bank's hearsay argument. *See* 1A R. Ray, TEX.LAW OF EVIDENCE § 862 (1980).

■ The jury is the exclusive judge of the facts proved, the credibility of the witnesses, and the weight to be given their testimony. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 796 (1951). This Court may not set aside a jury verdict merely because the jury could have drawn different inferences or conclusions. *Id.* 239 S.W.2d at 797. It is axiomatic that the jury has the duty to consider all of the facts before it and resolve any conflicting evidence. We find the evidence presented to be probative and competent, and by its answers to special issues one and two the jury found three checks to be forged and one check altered. Points of error thirty-four, thirty-five, thirty-six and thirty-seven are overruled.

■ No special issue required the jury to determine the amount of actual damages, if any, suffered by appellees. The Bank argues on appeal the evidence was too speculative to show damages in an amount certain. We disagree. As stated heretofore, the jury examined "true copies" of the four checks, seeing the exact amount as charged on each check. The vice-president of the Bank affirmed the specific charges against the Hackworth account. The uncontroverted sum of $53,480.00 was thus established.

In connection with this argument, the jury found in special issue twelve that the Bank did not use "reasonable banking standards when it charged the account of Rubelle Hackworth with the following checks: [exhibit number and *amount on the face of each of the four checks set out* ]."

The Bank, although not objecting to the omission at trial, now argues a special issue should have been submitted to ascertain damages. Never in controversy was the amount of the checks. Even if a special issue should have been submitted inquiring as to the total amount, the omitted issue may be deemed found by the court when necessary to support the judgment. *Davidson v. McCollum*, 427 S.W.2d 358, 359 (Tex.Civ.App.—Eastland 1968, no writ); TEX.R.CIV.P. 279. Under the evidence properly before the jury the total sum of the amount charged against the Hackworth account was a matter of mathematical calculation. We hold the trial court made an implied finding in this case of the amount of actual damages since no objection to the omission was made. *See Dee v. Parish*, 160 Tex. 171, 327 S.W.2d 449 (1959). Points of error twenty-three, twenty-four, and twenty-five are overruled.

■ By its first and second points of error the Bank challenges the sufficiency of the evidence under any theory of liability to support the judgment. By its third point of error the Bank urges the jury verdict is incomplete and cannot support the judgment for liability and damages against it. Other than the Texas Deceptive Trade Practices Act allegations, appellees

pled and relied upon breach of express and implied warranties, breach of contract, and negligence of the Bank in charging the account for the four checks as grounds of recovery. These special issues were submitted and answered:

### SPECIAL ISSUE NO. 4

Do you find from a preponderance of the evidence that Defendant Bank represented, expressly or impliedly, that its checking account services were of a particular standard, quality or grade when they were of another?

**Answer: WE DO**

The jury then found plaintiff was "adversely affected" by that conduct.

### SPECIAL ISSUE NO. 6

Do you find from a preponderance of the evidence that Rubelle Hackworth was negligent in permitting Bob Martin and Ruth E. Martin to have access to her records, check book, and monthly statements of account?

**Answer: YES**

The jury then found that such negligence substantially contributed to the alteration or forgery. Additionally, the jury found Hackworth was *not* negligent in allowing others to write her checks.

### SPECIAL ISSUE NO. 10

Do you find from a preponderance of the evidence that First National Bank paid in good faith, ... the check claimed to be altered?

**Answer: NO**

Special Issue No. 11 inquired identically as to the three checks claimed to be forged, setting out the dates and amounts. The jury also answered "No."

### SPECIAL ISSUE NO. 12

Do you find from a preponderance of the evidence that the First National Bank used reasonable commercial banking standards when it charged the account of Rubelle Hackworth with the following checks: [The four checks' exhibit numbers, dates, and amounts set out]

**Answer: WE DO NOT** [for each check individually]

Section 3.404(a), TEX.BUS.COM.CODE ANN. (Vernon 1968) provides:

> Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it; but it operates as the signature of the unauthorized signer in favor of any person who in good faith pays the instrument or takes it for value.

\* \* \* \* \* \*

The signature card of Hackworth was verified as that of the Bank and was in evidence. The statute requires that both parties have a responsibility to prevent the kind of loss as in this case. A bank is conclusively presumed to know the signature of a depositor and may not charge his account with amounts of any checks not signed by him, no matter how artistic the forgery and regardless of whether the bank was negligent. *Oak Cliff Bank & Trust Co. v. Aetna Casualty & Surety Co.*, 436 S.W.2d 165, 168 (Tex.Civ.App.— Dallas 1968, no writ). A depositor has the duty to notify the bank of any forged or altered signatures within a reasonable time. The evidence in this case shows the checks to be drawn in May, 1978, and discovery of the alteration and forgeries to be in July, 1978. Section 3.406 of the Code, *supra*, provides:

> Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting [the alteration or forgery] against ... [a] payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the ... payor's business.

In the present case the jury found Hackworth to be negligent in permitting the Martins access to her records, check book, and bank statements, and the negligence substantially contributed to the alteration or forgery. However, the jury found the Bank did not pay the instruments in good faith and the Bank did not use reasonable commercial banking standards in charging the checks against the account. *See*

§ 4.406 of the Code, *supra*. We hold that appellees were not precluded from asserting the alteration and forgeries and claiming damages. Viewing the evidence in the light most favorable to the jury findings, we hold there was shown a breach of an express or implied warranty. *See Cravens v. Skinner*, 626 S.W.2d 173, 176 (Tex.App.—Fort Worth 1981, no writ).

■ The jury findings in answer to special issues ten, eleven and twelve also go to breach of contract and support such a judgment. No objection that the court erred in failing to submit a proximate cause issue was made at trial, but it is argued on appeal. The trial court is deemed to have found the Bank's failure to use reasonable commercial banking standards and good faith in payment resulted in breach of contract, the breach being the proximate cause of the damages. The contractual relationship between the Bank and Hackworth had been established; the ultimate issues with respect to breach of contract were whether the Bank acted in good faith and whether the Bank used reasonable commercial banking standards in paying the checks. An omitted issue, if raised and supported by the evidence, must be deemed as found by the trial court in such a manner as to support its judgment. *Hoffman v. Wall*, 602 S.W.2d 324, 326 (Tex.Civ.App.—Texarkana 1980, writ ref'd n.r.e.); TEX.R.CIV.P. 279. Points of error fourteen, fifteen, and sixteen (proximate cause issue not submitted to jury) are overruled. Points of error one, two, and three are also overruled. We hold that breach of contract was established, and the evidence supports the judgment.[1]

Another objection which the Bank levels at special issue four (representation that its checking account services were of a particular standard) is directed to the applicability of the Deceptive Trade Practices Act, a question rendered moot by this opinion.

The Bank centers its arguments in points of error eight, nine, ten, eleven, twelve and thirteen, on the inapplicability of the DTPA and its submission in special issue four.

Those arguments now are moot. However, we believe the jury could have considered that issue in the context of a contractual relationship between the Bank and Hackworth. We cannot say the trial court erred in submitting special issue four.

■ We overrule the Bank's point of error thirty and find the trial court could properly award pre-judgment interest. We reform the judgment to show the pre-judgment interest to be based on actual damages at the rate of six percent (6%) per annum from the date each instrument made the basis of this suit was paid by the Bank (charged against the account) until the date of judgment. Pre-judgment interest may be awarded pursuant to a statute and also under the equitable principle that one should be compensated for the unauthorized use or detention of his money. *Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d 480, 485 (Tex.1978).

The judgment against the Bank is affirmed as to actual damages, affirmed as reformed as to pre-judgment interest, and affirmed as to post-judgment interest. The judgment against the Bank is reversed and rendered as to all awards and damages based on the Texas Deceptive Trade Practices Act, including treble damages, treble prejudgment interest, and attorney's fees. Costs will be taxed equally.

TIJERINA, Justice, dissenting.

We respectfully dissent. This Court is confronted with the substantial question of whether appellee Rubelle Hackworth, deceased, as a depositor of a checking account with appellant bank was a "consumer" under the Texas Deceptive Trade Practices and Consumer Protection Act (hereinafter referred to as the DTPA-Consumer Protection Act). In *Riverside National Bank v. Lewis*, 603 S.W.2d 169 (Tex.1980), a divided Supreme Court held that a loan applicant was not seeking to acquire "goods or services" and therefore was not a "consumer," that money could not be classified as a tangible chattel or "goods,"

1. We do not address the negligence theory of recovery in this case.

and the court also rejected the position that an extension of credit qualified as a "service." Plaintiffs argued that in the course of extending credit, the bank necessarily provided other services such as assistance in filling out the loan application, financial counseling and loan processing. The court noted that there was no evidence or pleadings on these collateral activities. Judicial interpretation of collateral services by banks to depositors of checking accounts, to determine their status as consumers, requires a liberal construction of the DTPA and a strict interpretation of the *Riverside* case. *See* Patton, *Case Law Under the Texas Deceptive Trade Practices-Consumer Protection Act*, 33 BAYLOR L.REV. 533, 552 (1981).

In the instant case, the nature and extent of banking services which warrant subjecting appellants to the provisions of the DTPA-Consumer Protection Act are reflected by the record. Joe C. Mosty, the bank Vice-President, identified Exhibit No. 5, which was the signature card of Rubelle Hackworth for a personal checking account and admitted into evidence without objection. It was well within the trial court's prerogative to infer from the pleadings, evidence and findings by the jury that appellee acquired banking services for her benefit constituting: (1) the safekeeping of her money; (2) maintaining a record of her checking account; (3) a monthly balance statement; and (4) that her checking account would be serviced in accordance with the good faith and ordinary care provisions of the Texas Uniform Commercial Code (signature card). Here we distinguish *Thompson v. First Austin Co.*, 572 S.W.2d 80, 81–82 (Tex.Civ.App.—Fort Worth 1978, writ ref'd n.r.e.) where the court held against plaintiff, because the claimed services were for the benefit of the lender and not the borrower. The testimony of Gladys Rogers, supervisor of bookkeeping and data processing is material to this issue.

Q: With regard to the checking account services in the First National Bank, do you recall having seen a brochure that says, "First National's full range of financial services can work full time serving as your *personal bookkeeper*, and remember we are always working for you first to give you your money's worth"

A: Yes sir.

Q: And is that the position that First National Bank takes with regard to *each* and *everyone of their depositors?*

A: Yes sir.

[Emphasis added.]

We now confront the "consideration" aspect of the banking services. The court in *Fortner v. Fannin Bank in Windom*, 634 S.W.2d 74, 75, 76 (Tex.App.—Austin 1982, no writ) held that, "... a service performed gratuitously is not a 'purchased' service within the meaning of the Act." In the case at bar, the consideration for banking services, was established by the testimony of Joe C. Mosty, relating, that the bank: (1) was allowed to use the money in appellee's checking account; (2) appellee was required to maintain a minimum balance; (3) limit the number of checks; (4) an activity charge was assessed for failure to maintain a minimum balance or write an excessive number of checks; (5) a service charge for overdrafts; and (6) a possible fee for personalized checks—Mr. Mosty did not remember whether appellee was so charged.

More recently, *First National Bank of Mercedes, Texas v. La Sara Grain Co.*, 646 S.W.2d 246 (Tex.App.—Corpus Christi 1982, writ granted) held that, "Processing of checks by a bank is within the definition of 'services' under the TEX.BUS. & COM. CODE § 17.41 et seq.", citing *Farmers & Merchants State Bank of Krum v. Ferguson*, 617 S.W.2d 918 (Tex.1981).

Section 17.45(4) of the DTPA-Consumer Protection Act, defines a consumer as an individual, partnership, corporation, or governmental entity who seeks or acquires by purchase or lease any goods or services. Additionally, the Supreme Court recognized two requirements that must be established for a person to qualify as a consumer under the DTPA-Consumer Protection Act. One requirement is that the person must

have sought or acquired *goods* or *services* by purchase or lease and secondly the goods or services purchased or leased must form the basis of the complaint. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex.1981). (Emphasis added). In the instant case, appellees satisfy both of these requirements. The pleadings allege that appellee Rubelle Hackworth sought or acquired the services of appellant-bank, i.e. the checking account with the collateral services and the goods or services purchased were the basis of the complaint. Appellees did complain of breach of express and implied warranties under the DTPA-Consumer Protection Act. Most recently, the Supreme Court held that it is not necessary nor is it required to seek or acquire goods and services *from the bank* in order to meet the statutory definition of consumer. *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705 (Tex.1983). Thus, the only requirement is that the goods or services sought or acquired by the consumer form the basis of the complaint. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d at 539. Our conclusion would be that appellant, Rubelle Hackworth, was a consumer under the DTPA-Consumer Protection Act.

We do not agree with the majority's conclusion that the alleged cause of action under the DTPA-Consumer Protection Act for trebled damages and attorney's fee was extinguished when Rubelle Hackworth died, and did not survive in favor of her estate or representatives. The appellant nor the appellees have submitted a case in their briefs which is directly in point; consequently, we review the question as one of first impression. Appellees' cause of action asserted under DTPA-Consumer Protection Act claimed damages and being adversely affected by the deceptive trade practices of appellant bank. The DTPA-Consumer Protection Act does not provide for survival. Appellant argues that the *"Act"* creates a cause of action for the recovery of a statutory penalty and that as a result thereof, punitive statutorily created claims do not survive.

The Supreme Court of Texas in the early case of *Peavy v. Goss*, 90 Tex. 89, 92, 37 S.W. 317 (1896) in considering the right of a widow to maintain an action stated: "In a legal sense, a person is aggrieved by an act when a legal right is invaded by the act complained of.... In this case, the father being dead, the mother had the right to sue, ..." *Id.* 37 S.W. at 319. And later in a similar case *Ellis v. Brooks*, 101 Tex. 591, 102 S.W. 94 (1907), stated: "There may be but one right of recovery, but any party aggrieved may prosecute it, and this right of one cannot be abated by the death of another. The only action abated by death of the husband was that which accrued to him." *Id.* 102 S.W. at 96. But, the reasoning for this ruling was that *recovery by the husband might bar an action by the wife.* "Her right is asserted in this action and it was unaffected by his death." *Id.* 102 S.W. at 96.

In *Basham v. Smith*, 149 Tex. 279, 233 S.W.2d 297 (1950) the survival question arose when the defendant died prior to trial in an action under the Federal Rent Control Act. The court, after reviewing the federal cases in point, declared: "What, then, do we understand the federal decisions to reflect on the survival question before us?" *Id.* 233 S.W.2d at 301. "The more recent decisions apparently turn on whether the statutory cause of action should be considered a penalty...." *Id.* 233 S.W.2d at 301.

The Supreme Court of the United States considered the question of survival in *United States v. Daniel*, 47 U.S. (6 How.) 10, 12 L.Ed. 323 (1848), stating: "If the person charged has secured no benefit to himself at the expense of the sufferer, the cause of action is said not to survive; but where, by means of the offense, property is acquired which benefits the testator, there an action for the value of the property shall survive against the executor." 47 U.S. at 13, 12 L.Ed. at 324. In *Patton v. Brady*, 184 U.S. 608, 22 S.Ct. 493, 46 L.Ed. 713 (1902), the Court quoted from the *Daniel* case: "In the absence of some special legislation the question in each case must be settled by the common law or the law of the state in

which the cause of action arose." 184 U.S. at 614, 22 S.Ct. at 495, 46 L.Ed. at 717.

We adopt the rationale of the *Daniel* case and conclude that appellee was damaged and suffered a loss when the three altered and one forged checks were cashed and charged to her account by appellant bank. It is clearly established that a bank that pays a forged or altered check must bear the loss and cannot charge the depositor's account with the amounts paid. *See Oak Cliff Bank & Trust Co. v. Aetna Casualty & Surety Co.,* 436 S.W.2d 165, 167–68 (Tex.Civ.App.—Dallas 1968, no writ). In *Mahan Volkswagen, Inc. v. Hall,* 648 S.W.2d 324 (Tex.App.—Houston [1st Dist.] 1982, no writ), the court addressed an issue on survival of a cause of action under TEX.REV.CIV.STAT.ANN. art. 5525 (Vernon 1958) and *the DTPA-Consumer Protection Act.* The court stated: ". . . since there was no evidence of physical pain and mental anguish, *the only damages which were properly trebled are the decedent's funeral expenses and automobile damages. . ..." Id.* at 334 (On Motion for Rehearing). (Emphasis added). Thus the cause of action survived because appellee as the depositor suffered and appellant bank received a benefit.

We now respond to appellant's contention that recovery under the *"Act"* constitutes a statutory penalty. We disagree since recovery of treble damages and attorney's fees under the DTPA-Consumer Protection Act has been categorically characterized as remedial and not punitive. We are instructed by the Supreme Court in *Woods v. Littleton,* 554 S.W.2d 662 (Tex. 1977), that in this appeal, this court must interpret the Consumer Protection Act and that: "The Legislature has declared that '[i]n all interpretations, the court shall look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil and the remedy.'" *Id.* at 665. "This subchapter shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection." *Id.* at 665; DTPA-Consumer Protection Act § 17.44. Additionally, it has been held that the DTPA-Consumer Protection Act is remedial, broad in scope and application. *See Ranger County Mutual Insurance Co. v. Guinn,* 608 S.W.2d 730, 732 (Tex.Civ.App.—Tyler 1980, writ dism'd); DTPA-Consumer Protection Act § 17.43. The remedies provided in this subchapter are in addition to any other procedures or remedies provided for in any other law. *See Jack Criswell Lincoln-Mercury v. Haith,* 590 S.W.2d 616, 620 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). More recently, the Supreme Court in *Pennington v. Singleton,* 606 S.W.2d 682 (Tex.1980) stated, "The legislature has provided for extra damage recovery so that consumers will have incentive to pursue their claims. Another purpose of liability in excess of actual damages is to deter violations of the Act." *Id.* at 690. We conclude that the DTPA-Consumer Protection Act is remedial in scope and application and that appellees' cause of action was not extinguished upon the death of Rubelle Hackworth.

The record reflects that the suggestion of death of plaintiff was filed with the trial court and the order substituting Mattie B. Denson, executrix, as party-plaintiff was rendered on November 6, 1980. Appellant filed a motion to compel joinder of parties, which motion was approved by the court by an order rendered April 29, 1981. Consequently, at appellant's request, Mattie B. Denson and Lena Rabensburg, were the party-plaintiffs representing the estate of Rubelle Hackworth, deceased. Appellant did not file a plea in abatement pursuant to either TEX.R.CIV.P. 150 or TEX.R.CIV.P. 151. TEX.R.CIV.P. 150 provides in pertinent part:

> Where the cause of action is one which survives, no suit shall abate because of the death of any party thereto before the verdict or decision of the court is rendered, but such suit may proceed to judgment as hereinafter provided.

TEX.R.CIV.P. 151 provides in pertinent part:

> If the plaintiff dies, the heirs, or the administrator or executor of such decedent may appear and upon suggestion of such death being entered of record in open court, may be made plaintiff, and the suit shall proceed in his or their name.

It is our opinion that appellant consented to the substitution of Mattie Denson and Lena Rabensburg as party-plaintiffs, and waived the issue of survival by failure to file a plea in abatement before trial. *See Booth v. Blanchette,* 208 S.W.2d 105, 108–09 (Tex. Civ.App.—Beaumont 1947, no writ). It is well settled that unless the opposing party puts in issue, by plea in abatement, the executor's right to prosecute suit upon the death of the testatrix, the opposing party's failure admits that the executor was duly authorized to act in the capacity in which he prosecuted the suit. *Id.* at 108–09.

Accordingly, we would affirm the award of treble damages and attorney's fees as provided by the DTPA-Consumer Protection Act.